818 P.2d 295

**Donald FUSSELL and Ann Honesty Fussell, Plaintiffs–Appellants,**

v.

**Duane L. ST. CLAIR, M.D., Defendant–Respondent.**

No. 18208.

Supreme Court of Idaho, Boise, December 1990 Term.

Sept. 9, 1991.

Rehearing Denied Oct. 31, 1991.

Webb, Burton, Carlson, Pedersen & Webb, Twin Falls, for appellants. Monte B. Carlson argued.

Quane, Smith, Howard & Hull, Boise, for respondent. Andrew C. Brassey argued.

JOHNSON, Justice.

This is a medical malpractice case. The issue that we find dispositive is whether the trial court correctly instructed the jury on the subject of proximate cause. We hold that in an action for medical malpractice when there is evidence of two or more causes that contributed to the damage suffered, for only one of which the doctor is responsible, the proper proximate cause instruction should instruct the jury that any negligence of the doctor was a proximate cause of the injury if it was a substantial factor in bringing about the damage. We specifically reject the inclusion of an instruction under these circumstances requiring the claimant to prove that the injury would not have occurred "but for" the doctor's negligence.

## I.

### THE BACKGROUND AND PRIOR PROCEEDINGS.

The Fussells were the parents of a child who suffered brain damage at birth. Dr. St. Clair was the attending physician during the delivery. The child subsequently died as a result of the brain damage.

The Fussells sued Dr. St. Clair, contending: (1) the doctor was negligent during the delivery by artificially rupturing Mrs. Fussell's fetal membranes when the child's head was too high, thereby causing a prolapsed umbilical cord, and (2) the doctor mismanaged the delivery when the prolapsed cord was discovered. At trial, the Fussells introduced evidence to substantiate these contentions.

The doctor defended on the ground that he was not negligent in rupturing the fetal membranes, that the prolapsed cord occurred independent of any negligence on the part of the doctor, and that the doctor responded properly to the occurrence of the prolapsed cord.

The trial court instructed the jury that if they found the doctor had been negligent during the delivery of the child, they must determine whether the doctor's negligence was a proximate cause of the injury to the child. The trial court defined proximate cause to mean:

> a cause which, in the natural and probable sequence, produced the complained injury, loss or damage, and "but for" such cause, the damage would not have occurred. It need not be the only cause. It is sufficient if it is a substantial factor in bringing about the injury, loss or damage. It is not a proximate cause if the injury, loss or damage likely would have occurred anyway.

During the jury deliberations, the jury sent inquiries to the trial judge concerning the proximate cause instructions. The jury rendered a verdict in favor of the doctor. Six of the ten jurors who signed the verdict also signed a note to the trial judge stating that although they agreed that the doctor was negligent, they were not "totally convinced" that the doctor's negligence was the proximate cause of the infant's death.

Following entry of judgment in favor of the doctor, the Fussells moved for a judgment n.o.v. or in the alternative for a new trial. The trial court denied these motions, refusing to accept the Fussells' argument that the proximate cause instruction erroneously required proof that "but for" the negligence of the doctor, the brain damage and death of the child would not have occurred. The trial court interpreted the note from the jury accompanying the verdict as meaning the Fussells had not proved proximate cause by a preponderance of the evidence. The trial court also ruled that I.R.E. 606(b) prohibited consideration of the note because it required inquiring into the mental processes of the jury in order to impeach the verdict.

The Fussells appealed, stating two issues:

1. Whether the "but for" standard incorporated into the trial court's instruction of proximate cause was an erroneous statement of the law in a case involving multiple causes.

2. Whether the trial court should have resubmitted this case to the jury with instructions to apply the "more probable than not" standard of proof when the verdict was accompanied by an explanation signed by six of the ten jurors signing the verdict stating that they had reached the verdict because they were "not totally convinced" on the issue of proximate cause.

## II.

### THE PROXIMATE CAUSE INSTRUCTION SHOULD NOT HAVE REQUIRED THE FUSSELLS TO PROVE THAT "BUT FOR" ANY NEGLIGENCE OF THE DOCTOR THE BRAIN DAMAGE AND DEATH OF THE CHILD WOULD NOT HAVE OCCURRED.

The Fussells assert the trial court should not have included in the proximate cause instruction a requirement that the jury find the damage and death of the child would

not have occurred "but for" the doctor's negligence. Under the circumstances of this case, we agree that the instruction was erroneous.

We first point out that the trial court copied the first portion of the current Idaho Jury Instructions (IDJI) 230 in formulating the proximate cause instruction at issue here. The current IDJI 230 also contains a second paragraph that is bracketed to indicate that it may be used in appropriate cases:

[There may be one or more proximate causes of an injury. When the negligent conduct of two or more persons contributes concurrently as substantial factors in bringing about an injury, the conduct of each may be a proximate cause of the injury regardless of the extent to which each contributes to the injury.]

Both the former and the current IDJI 231 state:

### MULTIPLE OR CONCURRENT CAUSES

The Committee recommends that no instruction as to multiple or concurrent causes be given.

### Comments

These aspects of causation are covered by the definition of proximate causation. Any coverage more detailed is apt to be confusing or incorrect under the comparative negligence doctrine.

I.R.C.P. 51(a)(2) covers the manner in which IDJI should be used:

**Use of Idaho Jury Instructions (IDJI).**—Whenever the latest edition of Idaho Jury Instructions (IDJI) contains an instruction applicable to a case and the trial judge determines that the jury should be instructed on the subject, it is recommended that the judge use the IDJI instruction unless [the judge] finds that a different instruction would more adequately, accurately or clearly state the law. Whenever the latest edition of IDJI does not contain an instruction on a subject upon which the trial judge determines that the jury should be instructed, or when an IDJI instruction cannot be

modified to submit the issue properly, the instruction given on that subject should be simple, brief, impartial and free from argument. When an instruction requested by a party is a modified IDJI instruction, the party should indicate therein, by use of parentheses or other appropriate means, the respect in which it is modified.

In this case, the portion of IDJI 230 incorporated by the trial court into its proximate cause instruction was not applicable to the case presented to the jury. The "but for" requirement was inappropriate for the jury to consider in light of the evidence presented by the parties.

In *Everton v. Blair*, 99 Idaho 14, 16, 576 P.2d 585, 587 (1978), the Court stated that "[t]he trial court is under a duty to instruct the jury on every reasonable theory recognized by law that is supported at trial."

Although the evidence presented by the Fussells indicated that Dr. St. Clair's negligence was the sole cause of the brain damage and death of the child, the evidence submitted by Dr. St. Clair indicated that there was a cause for which Dr. St. Clair was not responsible—an occult (hidden) prolapsed umbilical cord. Dr. St. Clair's evidence would have supported a finding by the jury that the prolapsed umbilical cord occurred without any negligence of the doctor. If the jury had accepted this evidence and yet had found that Dr. St. Clair was negligent in responding to the prolapsed cord when it was discovered, the jury might have been misled by the proximate cause instruction given by the trial court. The jury might have concluded that the doctor's negligence could not have been a proximate cause because even if the doctor had not been negligent, the brain damage and death of the child would have occurred. Stated in the same terms as the last sentence of the proximate cause instruction given by the trial court, the jury might have concluded that the doctor's negligence was not a proximate cause, because the brain damage and death would likely have occurred anyway.

It was not appropriate for the trial court to use the bracketed portion of IDJI 230

referring to one or more proximate causes, because there were not two or more persons whose negligence contributed concurrently as substantial factors in bringing about the injury. Also, the comments to IDJI 231 are misleading when there are multiple or concurrent causes in a case that does not involve comparative negligence.

This was a case in which the trial court should have formulated an instruction to submit the issue of proximate cause properly to the jury. The following instruction on proximate cause requested by the Fussells contains some of the elements that should have been included in the appropriate instruction in this case:

> When I use the expression "proximate cause," I mean a cause which, in natural or probable sequence, produces the damage complained of. It need not be the only cause. It is sufficient if it concurs with some other cause acting at the same time, which in combination with it, causes damage.

This formulation of proximate cause was contained in IDJI 230 until it was amended in 1987 to incorporate concepts to which our Court of Appeals referred in *Challis Irrigation Co. v. State*, 107 Idaho 338, 689 P.2d 230 (Ct.App.1984) and *Edmark Motors, Inc. v. Twin Cities Toyota*, 111 Idaho 846, 727 P.2d 1274 (Ct.App.1986). We note that *Challis* was a breach of contract case and that the discussion of proximate cause was dicta. *Edmark* was a fraud case in which there was only one cause of the alleged fraud.

In *Challis*, our Court of Appeals stated that the former IDJI 230 "does not make it entirely clear that in order for a concurring cause to give rise to liability, it must be a proximate cause in its own right." 107 Idaho at 343, 689 P.2d at 235. In *Edmark*, our Court of Appeals stated that the former IDJI 230 "essentially contains the 'but for' requirement, but it is silent as to a 'substantial factor.'" 111 Idaho at 849, 727 P.2d at 1277. We find in our own cases, however, concepts that are more applicable to the circumstances of this case than the current IDJI 230, *Challis* or *Edmark*.

*Formont v. Kircher*, 91 Idaho 290, 420 P.2d 661 (1965) was a medical malpractice case in which this Court considered whether the negligence of a doctor was a proximate cause of the loss of a patient's leg. The trial court, sitting without a jury, found the doctor had been negligent in treating the patient's leg but the doctor's negligence was not a proximate cause of the loss. In reversing the trial court's decision the Court stated:

> The trial court in effect did find proximate cause from the chain of circumstances. However, because the defendant did not have the full care of plaintiff, the court concluded there was no proof of proximate cause. In *Pigg v. Brockman*, 85 Idaho 492, 381 P.2d 286 (1963), this court held that there can be more than one proximate cause of an injury. Therein, this court quoted with approval the following statement from *Riddle v. Artis*, 243 N.C. 668, 91 S.E.2d 894, as follows:
>
> > "'It is elemental that there may be two or more proximate causes of an injury. These may originate from separate and distinct sources or agencies operating independently of each other; yet if they join and concur in producing the result complained of, the author of each cause may be held liable for the injuries inflicted, * * *.'" 85 Idaho at 501, 381 P.2d at 291.
>
> The negligence of the defendant concurred in the final result, and the trial court was in error in its conclusion that a causal relationship was not established.

91 Idaho at 299, 420 P.2d at 670.

■ Applying *Formont* to this case, if the negligence of Dr. St. Clair concurred in the brain damage and death of the Fussells' child, proximate cause was established. *Formont* does not require that proximate cause is established only when there is proof that "but for" the doctor's negligence, the damage would not have occurred.

*Fouche v. Chrysler Motors Corp.*, 107 Idaho 701, 692 P.2d 345 (1984) was a products liability action brought by Fouche for personal injuries suffered when Fouche's

car collided with an unmanned vehicle. Fouche claimed that his injuries were enhanced by malfunctions of his car's seat belt and collapsible steering column. The trial court ruled that Fouche had not proved that any defects in the seat belt and steering column proximately caused his injuries. In reversing this ruling, the Court said:

> Chrysler argues that because Mr. Fouche introduced no expert medical testimony to demonstrate that "plaintiff's injuries would not have occurred but for the alleged failures of the seat belt and collapsible steering column to properly function ...", the jury would have had to speculate whether plaintiff's torn aorta and other injuries would have been sustained in the collision even if there had been no defect or whether plaintiff's injuries were caused solely by the allegedly defective seat belt and steering column." However, this objection misconceives the proper analysis. The question is merely *whether ... the product defect was a substantial factor in causing the injuries suffered.* The conduct of the manufacturer need not be the sole factor, or even the primary factor, in causing the plaintiff's injuries, but merely a *substantial* factor therein.

107 Idaho at 704, 692 P.2d at 348 (emphasis in original) (citations omitted).

Applying *Fouche* to this case, the jury should have been instructed that proximate cause was established if the jury found that Dr. St. Clair's negligence was a substantial factor in causing the brain damage and death of the Fussells' child. *Fouche* specifically rejected the "but for" requirement to which the Court of Appeals referred in *Challis* and *Edmark.*

Considering both *Formont* and *Fouche,* we conclude that a version of the former IDJI 230 incorporating the substantial factor requirement would correctly state the proximate cause instruction in this case. The instruction should read:

> When I use the expression "proximate cause," I mean a cause which, in natural or probable sequence, produced the damage complained of. It need not be the

only cause. It is sufficient if it is a substantial factor concurring with some other cause acting at the same time, which in combination with it, causes the damage.

Our analysis in this case may seem to be at odds with our recent decision in another medical malpractice case—*Hilden v. Ball,* 117 Idaho 314, 787 P.2d 1122 (1989). In *Hilden,* we upheld the giving of a proximate cause instruction that included the "but for" requirement that we have disapproved in this case.

Despite some similarities to this case, *Hilden* involved only a single force or cause. In *Hilden,* the patient died from cardiac arrest brought on by lack of oxygen in the heart. The plaintiff alleged that the doctor's failure to preoxygenate the patient before surgery caused the patient's death. The doctor's defense was that the failure to preoxygenate the patient was not a violation of the local standard of health care. The Court specifically held that the trial court was not wrong in viewing the case as a single force or cause case. *Id.* at 335, 787 P.2d at 1143. In contrast, the evidence presented by the defense in this case would have permitted a finding by the jury of two forces or causes.

### III.

### CONCLUSION.

Because of our decision on the impropriety of the probable cause instruction, we do not address the second issue raised by the Fussells on appeal. We believe the questions raised by the jury's note accompanying the verdict are not likely to arise again on retrial.

We reverse the judgment of the trial court and remand for a new trial.

We award costs to the Fussells. Attorney fees on appeal were not requested.

McDEVITT, J., concurs.

BISTLINE, Justice, concurring with comment.

I concur in all of the opinion authored by Justice Johnson, other than the last two

paragraphs of Part II, which attempt to find a distinction between the instant case and *Hilden v. Ball,* 117 Idaho 314, 787 P.2d 1122 (1989). In my view that distinction cannot be drawn, and, moreover, it has not been drawn. It is true, as pointed out by Justice Johnson, that the final opinion for the Court in *Hilden* did state, and I quote directly from it:

> [E]ven assuming that the 'but for' causation language of IDJI 230 is inappropriate in a multiple 'force' or cause case, after reviewing the record of the trial proceedings up to the date of the instruction conference, *and giving deference to the trial judge* who presided over all the proceedings, *we cannot conclude that the trial court erred in viewing this as a single 'force' or cause case,* and therefore there is no basis for the appellant's claim. First, there was only a single defendant, Dr. Ball, on trial for negligence, and no other doctor or health care provider was mentioned in any of the evidence as having been guilty of negligence which caused or contributed to the death of Mr. Hilden.

*Id.,* 117 Idaho at 335, 785 P.2d at 1143 (emphasis added, footnote omitted).

My response to that at that time was readily delivered:

> In today's opinion for the Court, Chief Justice Bakes assumes that the 'but for' causation language is inappropriate in a multiple cause case, but by 'giving deference to the trial judge who presided ... we cannot conclude that the trial court erred....' [citation omitted]. All trial judges are entitled to deference simply because they *are* trial judges. My opinion now is and has been that this particular trial judge is one of the finest, but I will not be the second to say that any judge is not beyond committing error. Nothing would be more gratifying to me, and certainly to the plaintiffs as well, than that the six justices who have joined Chief Justice Bakes on now two occasions would also join him again in an opinion which at the least allows Judge Granata to reconsider his ruling, as we just did this past week in *Heitz v. Carroll,* 117 Idaho 373, 788 P.2d 188 (1990),

or better yet, ask him to preside over a second trial, which to my mind was the better course of action suggested in our *Heitz* opinions.

> [I]t just might bring about a change of two votes to remind the other members of the Court that the district judge, of a necessity, had to have been aware of *two* causes for Robert Hilden's wholly unexpected, sudden and tragic demise. Otherwise, how could Judge Granata have written, as he most definitely did in denying plaintiff's motion for j.n.o.v. and for new trial:

> > The fact that the plaintiff has the burden of proving that a defendant's negligence was a substantial factor in causing damage to the plaintiff does not excuse the plaintiff from proving that the injury [death] would not have occurred "but for" the defendant's negligence. Instruction No. 4 is also consistent with revised IDJI 230 (Rev. 7/87). The plaintiffs presented evidence that Dr. Ball's failure to preoxygenate was *the actual cause* of Mr. Hilden's death, *but Dr. Ball presented evidence that Mr. Hilden would have died anyway. Thus, it was necessary for the jury to be instructed on all aspects of proximate cause, including the so-called "but for" portion of the instruction.*

R. 208 (emphasis added; footnote omitted). The jury was in that manner directed to find for Dr. Ball unless it could find from the evidence that, notwithstanding the proof of causative negligence on the part of Dr. Ball, the plaintiff also had to prove a negative, namely, that Hilden would not have died anyway. This is an absurdity. This is especially so when not one of four experienced justices can find any support for Judge Granata's statement that *Hilden was going to die anyway.* This case and Instruction No. 4 may well stand as the most outstanding tragic travesty in the annals of Idaho civil jurisprudence.

Where the district court has ruled that the defense presented evidence that *Robert Hilden would have died anyway,*

which can only mean that he would have expired even had he been preoxygenated, there necessarily had to exist in the trial court's mind another cause, a second contributing cause. Those in the majority have expressed no concern as to this second cause. Hilden had not checked in to a mortuary with the purpose in mind of dying. He did not know he was going to die. The surgeon who was present and about to do surgery on him had not yet laid a knife on Hilden. But, he did die. The only evidence in the record is that it was a routine operation, that Hilden was overweight (which appears to have been for him a near normal condition), and that by reason thereof the two physicians had agreed upon positioning him so that he would suffer less discomfort.

Somewhere in the record there must be this *other* cause (or 'force' as so termed by Chief Justice Bakes)—*and something in the evidence presented by Dr. Ball* pointed to it. If there is no such other cause to which the district court can point, and his opinion pointed to none, then it stands to reason that there is no support for the assertion that Hilden would have died anyway. Under these circumstances it would be a happy day for the science of Idaho jurisprudence if the plaintiffs were granted the new trial which they are clearly entitled to have. I would be the first to recommend that it be tried with the same judge presiding. Simply stated, the trial judge's reading brought him into contact with the 'but for' instruction which the Court of Appeals initiated, and the trial judge thought it fit the facts of this case as is evident from his own opinion. There is no guarantee that mistakes will not be made. My confidence in the district judge is such that I find it shameful that he is not given the opportunity to rule again on plaintiff's motion.

*Hilden*, 117 Idaho at 341–42, 787 P.2d at 1149–50 (emphasis in original and added;

footnote omitted). To that earlier response, it needs to be kept well in mind that the instruction submitted by Hilden's counsel did *not* utilize any "but for" language, but was this, and nothing more:

This second majority opinion clears up the impression (left by the first opinion), that the plaintiffs were guilty of requesting Instruction No. 4, the instruction which obviously deprived them of any chance of recovery. As my earlier opinion shows, and the now changed majority opinion confirms, plaintiffs were not responsible for the erroneously damaging language in Instruction No. 4. The plaintiffs had requested only the first paragraph, which was:

'When I use the expression "proximate cause," I mean a cause which, in natural or probable sequence, produced the damage complained of. It need not be the only cause. It is sufficient if it concurs with some other cause acting at the same time, which in combination with it, causes damages.'

The majority's failure to earlier comprehend that only this much of Instruction No. 4 was asked for by plaintiffs undoubtedly has flavored the majority's thinking in both of its opinions. The instruction as requested by the plaintiffs was not invented for the Hilden–Ball controversy, but rather comes of good ancestry, and is a time-tested instruction. Under fire still, and probably forevermore, is the district court's addition of the "but for" second paragraph to Instruction No. 4.: [4]

For an act or omission by a defendant to be a proximate cause of a plaintiff's damages, you must find that the plaintiff's damages would not have occurred *but for* that act or omission, and that such act or omission was a substantial factor in causing the damages.

An act or omission is not a proximate cause of a plaintiff's damages if the damages would have occurred without such act or omission.

(Emphasis added.)

---

**4.** Perusal of the clerk's record shows that the defendant did not request any instruction on proximate cause. The "but for" clause was not attributable to the defendant. When plaintiffs filed their post-judgment motions, the defendants filed objection thereto and offered a de-

*Hilden,* 117 Idaho at 338–39, 787 P.2d at 1146–47 (emphasis in original).

Although it is now too late to rectify the injustice done by this Court to Bob Hilden's family, my brethren do a service to the law by holding the "but for" instruction was improperly given in today's case of *Fussell v. St. Clair.*

BOYLE, Justice, concurring and specially concurring.

I fully concur with the Court's opinion wherein we hold that "... in an action for medical malpractice when there is evidence of two or more causes that contributed to the damage suffered, for only one of which the doctor is responsible, the proper proximate cause instruction should instruct the jury that any negligence of the doctor was a proximate cause of the injury if it was a substantial factor in bringing about the damage." *Ante* at 591, 818 P.2d at 295. Likewise, I fully concur with the opinion to the extent that it reverses and remands for a new trial.

However, for the reasons set forth herein, I would go one step further and not allow the "but for" rule to have continuing vitality even with limited application. As clearly demonstrated by the proceedings before the district court and as will be discussed herein, the "but for" instruction causes significant confusion and should be altogether discarded. In future cases where the plaintiff presents a single cause, force or act of alleged negligence, and the defendant presents evidence of natural or other non-negligent causes, the trial court will be presented with a "multiple" cause or force case precluding use of the "but for" instruction. In my view we should avoid the confusion manifest here and apply the "substantial factor" test in proximate cause instructions.

I.

As the Court's opinion points out, this case is in many ways similar to our decision in *Hilden v. Ball,* 117 Idaho 314, 787 P.2d 1122 (1990). In *Hilden,* the plaintiffs asserted that the failure by an anesthesiologist to pre-oxygenate the patient was the sole negligent act causing the death of the patient. As a result of this single act of alleged negligence the district court found in *Hilden,* and by our giving substantial deference to the district court, we agreed it was a "single cause" case. 117 Idaho at 335 n. 2, 787 P.2d at 1143 n. 2. As will be evident hereafter, I now conclude that analysis was incorrect.

In the instant case, as noted by the Court, Dr. St. Clair is alleged to have been negligent in two ways: "(1) the doctor was negligent during the delivery by artificially rupturing Mrs. Fussell's fetal membranes when the child's head was too high, thereby causing a prolapsed umbilical cord, and (2) the doctor mismanaged the delivery when the prolapsed cord was discovered." *Ante* at 592, 818 P.2d at 296. Therefore, unlike *Hilden,* the plaintiffs in this case alleged and introduced evidence at trial of two causes that contributed to the ultimate death of the infant. Accordingly, in my view, this is clearly a "multiple cause" case and the "but for" instruction should not have been given.

In the lead opinion, we hold that "[t]he 'but for' requirement was inappropriate for the jury to consider in light of the evidence presented by the parties." *Ante* at 593, 818 P.2d at 297. In my view, this holding is based on the reasoning that "the 'but for' test is inapplicable when there are two (or more) forces, and each one by itself is sufficient to cause the injury. In such cases, the 'but for' test does not work because it would result in each force being absolved of liability." *Hilden,* 117 Idaho at 334, 787 P.2d at 1142 (quoting *Wilson v.*

fense for the court's giving of the "but for" instruction: "Likewise, Instruction No. 4 is a proper statement of the law in Idaho concerning proximate cause, and the Court did not err in providing the jury with that instruction." R., 214. Defendant did submit a special verdict form which gave clear recognition to the issue being whether defendant was negligent and

whether that negligence was *a* proximate cause of Robert Hilden's death. It also provides for apportioning percentages of fault to the doctor and to Hilden. As this dissent discusses, exactly how Hilden was in any way the cause of his own death will forever remain one of the great unsolved mysteries of the world.

*Kotzebue,* 627 P.2d 623, 630 (Alaska 1981)) (citations omitted) (emphasis omitted).

Ordinarily the giving of such an instruction would not necessarily require reversal. I ascribe to the well-established principle that we review and consider the jury instructions as a whole and if they adequately present the issues and correctly state the applicable law, reversible error is not committed, *Matter of Estate of Roll,* 115 Idaho 797, 770 P.2d 806 (1989); *McBride v. Ford Motor Co.,* 105 Idaho 753, 673 P.2d 55 (1983). Reversible error only occurs when an instruction misleads the jury or prejudices a party. *Salinas v. Vierstra,* 107 Idaho 984, 695 P.2d 369 (1985). However, after carefully reviewing the record and considering the difficulty experienced by the jury in dealing with the proximate cause instructions, it is my opinion that the "but for" language in Instruction No. 12 confused and misled the jury, thus prejudicing plaintiffs. Accordingly, I fully agree that plaintiffs are entitled to a new trial.

## II.

My concern with this case, however, is not limited solely to an analysis of whether this is a single cause or multiple cause case. I am concerned that without clarifying or distinguishing *Hilden* we appear to leave intact the principles established in that case. I am also concerned because my study and research in this instant action lead me to conclude that the reasons given in *Hilden* for finding that case to be considered one involving only a single cause yielded the wrong conclusion then, and, if perpetuated, would yield the wrong conclusion in the future. Therefore, to properly analyze this instant action, it is necessary to review our holding in *Hilden.*

In *Hilden,* we identified three reasons why we considered that action to be a single cause case. First, we held that the district court had determined that it was a single cause case and, after reviewing the record, we deferred to the district court's judgment. 117 Idaho at 335 & n. 2, 787 P.2d at 1143 & n. 2. Secondly, we affirmed the district court's ruling that *Hilden* was

a single cause case because there was only one defendant. We stated:

> [W]e cannot conclude that the trial court erred in viewing this as a single "force" or cause case and therefore there is no basis for the appellant's claim. First, there was only a single defendant, Dr. Ball, on trial for negligence, and no other doctor or health care provider was mentioned in any of the evidence as having been guilty of negligence which caused or contributed to the death of Mr. Hilden.... The entire thrust of plaintiff's case was that it was solely the defendant Dr. Ball who breached the local community standard of care by failing to pre-oxygenate Mr. Hilden before inducing anesthesia, which breach was the proximate cause of the death of Mr. Hilden.

117 Idaho at 335, 787 P.2d at 1143. This quoted passage makes it clear that because there was only *one* allegedly negligent actor in *Hilden,* we considered this to be a factor in determining whether it was a single cause case for purposes of the "but for" proximate cause instruction. Thirdly, we held that the plaintiff had failed to show multiple causes. We stated that "[t]he plaintiffs did not produce evidence of other multiple 'forces' or causes which were themselves sufficient to bring about the death of Mr. Hilden, and which were not related to any act or omission on the part of Dr. Ball." 117 Idaho at 336, 787 P.2d at 1144.

If it were necessary, which I do not believe it to be, that cases be analyzed and categorized as single or multiple cause cases, I would agree generally with utilization of reason one above in that determination process. However, in my view, the fact that there is only one defendant is not conclusive on this issue and should not be a factor because a single defendant may be negligent in more than one way, giving rise to multiple causes or forces such as clearly illustrated in the instant action. In addition, a defendant, whether it be in a routine tort action, a products liability action or a medical malpractice action, should not be allowed to gather together or consolidate several separate identifiable negligent acts

under the single protective label of "negligence" thus preventing on that basis alone a determination that the case is or is not a multiple cause case. I agree without reservation that we owe great deference to the trial courts on questions of fact and am strongly committed to that principle. *See* 117 Idaho at 335 n. 2, 787 P.2d at 1143 n. 2. However, the determination of multiple or single causes for purposes of the "but for" portion of the proximate cause instruction is a mixed question of law and fact culminating in the legal conclusion that a case is a "single cause" or "multiple cause" case. Therefore, on this type of question our review is not so limited as it is with purely factual issues. Thus, while we placed considerable reliance on the district court's apparent finding that *Hilden* was a single cause case, this deference was not obligatory and in my view, after reviewing that case anew, was not warranted.

In addition, I disagree with *Hilden*'s approach which left the impression that a single defendant should be equated with a single cause. While the lead opinion does not address or clarify this aspect of *Hilden*, I do not believe that we intended to equate a single defendant with a single cause in every case and, in my opinion, the language we used in *Hilden* indicative of this result was merely dicta. Although I only participated in a portion of *Hilden*, it was not my intent in joining the rehearing majority to equate the single defendant with a single cause. Accordingly, to that extent I clarify my position therein.

The reason I considered *Hilden* to be a single cause case at that time was based on the third reason indicated above, that the anesthesiologist's failure to take precautionary steps prior to the operation was the only negligent cause alleged by plaintiffs. In retrospect, I was in error. In the process of analyzing the instant case I have come to the conclusion that *Hilden* was a multiple cause case. What we failed to recognize in *Hilden* is that in addition to the causes asserted by the plaintiff, a defendant may allege and prove that certain natural or non-negligent forces are partially responsible for the harm at issue. When a defendant asserts additional natural or

non-negligent causes the jury must also assess these causes along with the causes asserted by the plaintiff. From the jury's perspective the case then becomes one of multiple forces or causes even though the plaintiff may have only alleged one negligent cause. Because the "but for" test is inappropriate in a multiple cause case, I have concluded that the inclusion of natural or non-negligent causes is necessary in determining what constitutes a multiple cause case. To allow the defendant to prove and argue that other forces caused the injury and still categorize the case as a single force case utilizing the "but for" test is not appropriate.

In *Hilden*, there were other causes, natural and non-negligent, which were causes or forces contributing to Hilden's death during surgery. It was undisputed that the patient was obese (440 pounds), which greatly compromised his ability to breath generally and particularly when laying down during surgery. In addition, it was undisputed that the defendant anesthesiologist had administered a series of drugs culminating in sodium pentothal to prepare Hilden for surgery. These drugs have the serious known side effect of curtailing a patient's ability to breath. As a result "the anesthesiologist must 'breathe' for the patient by manually ventilating or 'bagging' the patient's lungs with 100% oxygen." 117 Idaho at 315, 787 P.2d at 1123. Finally, "there was testimony that Mr. Hilden probably had gone into a 'bronchospasm,' a condition where the lung capillaries contract and will not operate to transfer oxygen from the air to the blood." 117 Idaho at 315 n. 1, 787 P.2d at 1123 n. 1.

As a factual matter these "causes" or "forces" were all present and undoubtedly contributed to the ultimate death of Hilden. Because we have accepted the rule that the "but for" test is inappropriate when multiple causes exist, the failure to recognize undisputed natural or non-negligent causes which affect an injured person does nothing more than ignore the rule we say that we are accepting. If the "but for" test is inappropriate because it logically precludes all multiple causes from liability, then it

seems improbable that we should ignore these additional natural or non-negligent causes or forces simply because no one asserts that they were the result of negligence. This is especially pertinent when the theory of the defense, both in evidence submitted and argument of counsel, is that non-negligent forces caused the harm to the plaintiff. By allowing these other forces to be ignored while retaining the "but for" rule inevitably precludes liability altogether. This conclusion is forcefully explained by reference to the facts of the instant case.

In this instant case the theory of the defense was that the occult or hidden prolapsed cord made the brain damage and death unavoidable. Regardless of whether or not this is medically accurate, this theory represents the only cause which exonerated the defendant physician from liability. However, if we were to ignore the occult prolapsed cord as a force or cause to be considered as a factor to explain the infant's brain damage and eventual death we would be allowing the "but for" test to exist in what is factually and in reality a multiple cause case. This process greatly concerns me because it essentially makes liability a logical impossibility if a jury understands and applies the "but for" test to most cases. Therefore, in my view, all separate acts of negligence by a defendant that contribute to the harm, as well as all natural or non-negligent causes, should be considered as separate forces or causes for purposes of determining single or multiple causes under the "but for" proximate cause instruction if the Court is committed to perpetuate this instruction as part of our jurisprudence. I would prefer that we not continue to adhere to the "but for" test, but if it is necessary to retain that concept, I would urge that it be based on the foregoing principles.

### III.

Although I have proposed in the preceding section an alternative approach to the "but for" test if we are committed to retaining it as part of proximate cause, after considerable thought and study on the issue I have come to the ultimate conclusion that the problems inherent in the "but for" test are so great that it is not worth preserving as part of our jurisprudence. Because the "but for" test is unquestionably inappropriate in multiple cause cases, the perpetuation of the test will introduce a fruitless inquiry into multiple causes in future cases when proximate cause is an issue. In future litigation plaintiffs will attempt to show multiple causes are present while defendants will assert only a single cause exists. This inquiry is unnecessary and counterproductive because it does not help the jury determine negligence or liability. In the instant case, for example, whether the infant was injured by a single cause or by multiple causes does not really help determine negligence or liability. Moreover, the "but for" test not only provokes a needless inquiry into whether there are single or multiple causes, but also makes a difficult causation question even harder and also imposes a greater evidentiary burden on plaintiffs. Therefore, the "substantial factor" instruction should be given in all cases regardless of whether the evidence suggest single or multiple forces or causes are present.

For juries, proximate cause is already a seemingly unexplainable confluence of considerations. The difficulty of the jury dealing with and applying the facts of this instant case to the proximate cause instruction is clearly manifest in the record before us and supports my conclusion that the "but for" test should be discarded. The "but for" test seemingly takes the inquiry from the actual facts, i.e., whether defendant physician's actions caused the baby's brain damage and death, to the unanswerable world of hypothetical "but for" considerations, i.e., *if* the physician had not acted in the way he did would the baby have died anyway. Since the physician did act in a certain way and the baby did die, it seems unexplainable that we should further complicate a difficult causation question by pondering the hypothetical world of what might have happened if the defendant's action had not occurred. In my view, causation should focus on the actual facts of the case and not be distracted by such

unanswerable questions as created by the "but for" test. *See* Green, *The Causal Relation Issue in Negligence Law,* 60 Mich.L.Rev. 543 (1962).

Whether the baby would have died anyway due to an occult prolapsed cord is not the primary or correct issue of the instant case. Rather, the key issue to be answered is whether the defendant physician's failure to meet the standard of care in rupturing the membrane caused the prolapsed cord and once it was discovered, whether the physician contributed to the baby's harm by failing to meet the standard of care in attempting to manage the delivery. Confusing these key questions with the unanswerable inquiry of whether the baby would have died anyway even if the physician had acted properly raises unnecessary confusion in an area of the law already difficult for jurors. Obviously, the defense could still argue that the patient's condition would have resulted in injury or death regardless of the defendant's actions. However, to allow the defendant physician to place into evidence and subsequently argue that the natural or non-negligent causes created the harm places plaintiff in an impossible position when the "but for" test is implemented.

As the lead opinion notes, the "but for" test was created by the Court of Appeals' acknowledged dicta in *Challis Irr. Co. v. State,* 107 Idaho 338, 689 P.2d 230 (Ct.App. 1984), and was subsequently relied upon by two other Court of Appeals decisions. *See Crosby v. Rowand Machinery Co.,* 111 Idaho 939, 729 P.2d 414 (Ct.App.1986); *Edmark Motors v. Twin Cities Toyota, Inc.,* 111 Idaho 846, 727 P.2d 1274 (Ct.App.1987). This test was subsequently included in IDJI No. 230 and ultimately approved by this Court in *Hilden.* Because I have concluded that the "but for" test creates a fruitless and unnecessary inquiry into single cause and multiple causes, I would clarify that we are overruling this aspect of these opinions and hold that the "but for" test is not part of Idaho's jurisprudence and concept of proximate cause. In its place, I urge across-the-board application of the "substantial factor" rule in the proxi-

mate cause instruction which has been adopted by today's holding.

The "substantial factor" standard is the test for proximate cause involving automobile negligence, *Hackworth v. Davis,* 87 Idaho 98, 390 P.2d 422 (1964), in product liability, *Fouche v. Chrysler Motors Corp.,* 107 Idaho 701, 692 P.2d 345 (1984), and as a result of our holding today is now the standard in multiple cause medical malpractice actions as well. By making the "substantial factor" test the standard for all proximate cause instructions by removing the "but for" test we will have simplified proximate cause by eliminating the unnecessary search for single or multiple causes and we will have also eliminated the internal conflict between the "but for" test and the "substantial factor" test as presently contained within the same IDJI 230 definition.

## IV.

While it is my view that the "but for" instruction constituted error, in light of the unique facts and circumstances of this case it is clear that the error was prejudicial, requiring that this case should be reversed and the case remanded for a new trial. There is ample evidence of jury confusion as a result of the "but for" instruction in this case. After the parties concluded their closing arguments and the district court instructed on all issues, including proximate cause, the jury retired to deliberate at 3:30 in the afternoon. Later the jury sent the court a note that stated: "We have tried three times to come to a decision. We cannot identify anyone who is leaning one direction or another. We believe that time or further deliberation will not change anyone's position." The trial court admonished the jury to continue their deliberations. Finally, at 10:20 p.m., the trial court released the jury for the evening and requested that they return in the morning for further deliberations.

After deliberations had commenced again the next morning, the jury sent another note to the court stating: "We have made no progress since last night. What are your recommendations?" At that time the

defendant made a motion for a mistrial which the court denied. Later that afternoon the defendant renewed his motion for a mistrial by stating:

Judge, I might add further that the—as I recall the jury started their deliberations roughly 3:30 in the afternoon on February 13. Was here through approximately 10:30 last night, the 13th. Started this morning at 9:00. It's now 3:40. They have sent out two notes [today] indicating they can't reach a decision. And I think if any more instructions are given, or time is given, that we're going to get a verdict that's compromised. Therefore, I think the jury ought to be declared a mistrial and hung jury.

The court responded to the defendant's motion by indicating that the jury had sent another note requesting additional instructions. The note from the jury said:

Concerning Instruction #7 lines 10 & 11 Could you please explain and clarify this point. We are struggling with the sentence in Instruction 12 lines 12 and 13.

Lines 12 and 13 of Instruction 12 elaborated on the "but for" rule contained in the preceding sentence by stating the hypothetical test that a cause "is not a proximate cause if the injury, loss or damage likely would have occurred anyway." The trial court indicated it would again deny the defense motion because it could "inquire, in a neutral fashion, of the nature of the impasse before declaring a mistrial." Tr., p. 786. During the course of deliberations the jury was given an additional proximate cause instruction.

At 6:20 p.m. that evening the jury rendered its verdict in favor of the defendant, ten of the twelve jurors apparently agreeing. However, six of the ten jurors signed a written communication which they submitted to the court with the special verdict form. This explanatory note apparently referred to the four elements of the cause of action listed in Instruction 7, and stated:

14 Feb. 89

Please Read this in Court if allowable.
Dear Judge McKee:

We were asked to evaluate 4 criteria to determine our verdict. I feel that the Defendant and St. Lukes Hospital did not meet the standard of care, however, the plaintiff did not present adequate evidence to satisfy my evaluation of criteria #3 [the proximate cause instruction]. You instructed us to include all 4 items in our decision. I agree with #1, #2 and #4 [negligence, the death of the infant, and damages] but I am not *totally convinced* of the evidence presented in #3. In compliance with your instructions I have reached a reluctant decision in favor of the defendant.
Thank you for your consideration.
Respectfully,
Wayne Stanley Forrey Seat #7
Debra Chantrill #1
Valerie Bell #3
Peter Thomaslewski #5
Stephanie Atwood seat #2
Marlene Rhead #11

(Emphasis added.)

This note accompanying, and, in my view, made a part of the special verdict form, raises questions of whether the jury was using the proper evidentiary standard in rendering its verdict. While the jury was informed of the proper preponderance of evidence standard, at least six of the jurors felt they needed to be "totally convinced" before they could find an element sufficiently proven and felt it necessary to submit the note to the court simultaneously with the special verdict. While the respondent argues that all this statement from the jury means is that these six jurors were not "totally convinced" that a preponderance of evidence existed, the obvious difficulty this jury was having, as evidenced by the record and defendant's own eloquent pleas for a mistrial during the deliberations, indicates to me that there was sufficient jury confusion in this case over the proximate cause issue. After carefully studying the record, I am of the opinion that the jury was misled and sufficiently confused by Instruction No. 12 to the extent that a new trial should be granted. *Salinas v. Vierstra*, 107 Idaho 984, 695 P.2d 369 (1985).

As evidenced by the record before us, the trial court attempted valiantly to correct the inherent deficiency and problems in the proximate cause instruction containing the burdensome "but for" language. The confusion was not created by the trial court or counsel, but rather by the defects and problems inherent in IDJI 230 and the unworkable "but for" concept in proximate cause issues.

In a thoughtful memorandum opinion the trial court indicated that he had doubts about whether the evidence supported the jury verdict but felt obligated to defer to the jury's factual findings. In my view, the problem with that in this particular case is that as a result of the jury's note returned simultaneously with the special verdict form, it is unclear whether the jury made the factual findings to which the district court deferred. In the memorandum decision the trial court stated:

In my view, and from all of the evidence in the case, the absolutely crucial fact to be determined was whether or not the infant's head was "high" at the time the membranes were broken. If the infant's head was high, I am satisfied from all of the evidence that it would have been improper to accelerate labor by rupturing the membranes without taking the extra precautions claimed by the plaintiffs and not taken here. If the infant's head was high, not engaged and not applied to the cervix, I am satisfied that the statistical probability of a prolapsed cord presenting was such that it would have been necessary to prepare the patient for an immediate caesarian in the event such a complication developed.

.   .   .   .   .

The evidence on this point was conflicting. According to the written records, the head was recorded as being high, and not engaged, a few minutes before the membranes were ruptured. One could infer that this condition continued, and that the head was still high when the procedures were begun. On the other hand, it was further explained that events move fast, and even if the head was recorded as being high a few min-

utes before, it well could have been engaged when the procedures began.

Nurse Schleis' testimony was inconsistent. At deposition, she testified that the infant's head was at a landmark that would have been inconsistent with a finding that the head was engaged; at trial, she testified that she was wrong in her prior testimony, mixed up her landmarks, and that the correct landmark was consistent with a finding that the head was engaged.

.   .   .   .   .

The jury had a full and ample opportunity to hear and weigh the conflicting evidence, and to determine the credibility of the witnesses who testified. Under the circumstances of this case, I do not find that the evidence clearly supports the conclusion that the head was high when the membranes were ruptured. Under the instructions articulated in *Quick v. Crane*, [111 Idaho 759, 727 P.2d 1187 (1986)], giving full respect to the jury's findings and based on all of the evidence in the case, I am *not* "left with the definite and firm conviction that a mistake has been committed."

I readily concede that I have reservations and doubts. The appearance of conflict between the written records and the testimony at trial, and the inconsistency between the deposition testimony and testimony at trial of Nurse Schleis is troublesome. Nevertheless, the inconsistencies in the written notes and in the testimony of Nurse Schleis were thoroughly explored and explained at trial by both sides. As I read the import of *Quick v. Crane*, supra, and *Robertson v. Richards*, [115 Idaho 628, 769 P.2d 505 (1989)], doubts and reservations are not sufficient to overcome the expectation that the court will respect the collective wisdom of the jury.... I am not so convinced here, and I therefore decline to interject a different conclusion [than the jury] on this crucial factual contention.

While I would agree with the district court's analysis generally, I disagree with its premise that the jury definitely decided that the infant's head was engaged. The

note submitted with the special verdict form by six of the jurors indicates that they felt the defendant physician was negligent. Add to these six protesting jurors the two who did not join the verdict and there was a total of eight jurors in this case who may not have accepted the premise that the head was engaged. In my view, the jury rendered its verdict on the misunderstood issue of proximate cause created by the "but for" language of Instruction No. 12.

The lead opinion does not address whether I.R.E. 606(b) precludes this Court from considering this note by the jury. In my view the note must be considered as part of the jury verdict and is relevant to our analysis here. If the note had been submitted to impeach the verdict or if juror testimony was submitted for that purpose, it obviously could not be considered. However, the note was simultaneously delivered to the trial court *with* the verdict form and is not an attempt to impeach the verdict. Based on the erroneous "but for" instruction, this note accompanying the verdict, when considered in light of the apparent confusion of the jury over the application of the facts to the proximate cause instructions, leads me to conclude that the plaintiffs have been prejudiced and a new trial should be granted on this basis as well as the other reasons articulated.

### V.

As indicated at the outset of this specially concurring opinion, ordinarily the giving of an instruction containing the troublesome "but for" language would not necessarily or always require reversal. I ascribe to the principles that we are to review and consider jury instructions as a whole and if they do not mislead or confuse the jury, reversible error has not occurred. *Matter of Estate of Roll*, 115 Idaho 797, 770 P.2d 806 (1989); *McBride v. Ford Motor Co.*, 105 Idaho 753, 673 P.2d 55 (1983). I am committed to the principles that a jury verdict will not be overturned if it is supported by substantial, although conflicting, evidence. *Quincy v. Joint School Dist. No. 41*, 102 Idaho 764, 640 P.2d 304 (1981). Likewise, I am convinced that questions of proximate cause are for the trier of fact to

determine and such will not be disturbed on appeal if supported by substantial evidence, *Mann v. Gonzales*, 100 Idaho 769, 605 P.2d 947 (1980), and that on appeal all reasonable inferences are viewed in favor of the jury verdict. *Henderson v. Cominco American, Inc.*, 95 Idaho 690, 518 P.2d 873 (1974).

However, in light of the record containing the written inquiries sent by the jury to the trial judge during the deliberation process seeking clarification and the note accompanying the jury verdict, I am satisfied and conclude that the jury was misled as a result of the proximate cause instruction and the "but for" language which was inappropriate in a "multiple" cause or force case. In my view this resulted in prejudice to the plaintiffs requiring a new trial.

Accordingly, I concur in today's holding remanding for a new trial and for the reasons articulated herein I specially concur.

BISTLINE, J. concurs.

BAKES, Chief Justice, dissenting:

The majority's attempt to distinguish this case from *Hilden v. Ball* is unconvincing. In *Hilden v. Ball*, 117 Idaho 314, 787 P.2d 1122 (1990), the plaintiff alleged that Dr. Ball was negligent in failing to pre-oxygenate his patient before surgery, and this negligence proximately caused the patient's death. The doctor defended, producing evidence that the cause of the patient's death was a bronchial spasm which precluded any oxygen from transferring from the lungs to the blood, and that pre-oxygenation would not have made a difference. In *Hilden* we approved the "but for" proximate cause instruction of IDJI 230.

In this case the plaintiff alleged that Dr. St. Clair was negligent in artificially rupturing Mrs. Fussell's fetal membranes when the child's head was too high, thereby permitting the umbilical cord to prolapse. Dr. St. Clair defended on the ground that the prolapsed umbilical cord occurred naturally (an occult prolapsed umbilical cord) and was not caused by his conduct. In both this case and in *Hilden v. Ball*, the doctors defended on the ground that the condition occurred naturally, and not for the reason asserted by the plaintiff.

**606**

In *Hilden v. Ball* we stated that under those circumstances the IDJI 230 "but for" proximate cause instruction was the correct instruction to be given. In this case the majority says it was not.

I am unable to see a meaningful distinction between this case and *Hilden v. Ball*. In each case the defense to the plaintiff's claim was that the death or injury occurred as a natural result of conditions in the patient's body. In *Hilden v. Ball* it was the bronchial spasm in the lungs. In this case it was a natural occult prolapsed umbilical cord.

I believe that the trial court properly gave the IDJI 230 instruction which we approved in *Hilden v. Ball*. I.R.C.P. 51(a)(2) directs that the court should have given that instruction. We should not reverse a jury trial of seven days on such a tenuous distinction as the Court has drawn in this case. We cannot expect perfection in the conduct of trials, only fairness. I believe it is unfair to reverse the jury's decision in this case based upon two words in a jury instruction which we approved less than a year ago in *Hilden v. Ball*.