W. JONES, Justice,
I respectfully dissent as to part III C of the majority opinion. I agree with the majority in so much as Harrison was required to produce expert testimony on the issue of whether Dr. Binnion was the proximate cause of Harrison’s resulting CPM. However, I would hold that Harrison effectively met his burden at the summary judgment phase; therefore, I would reverse the district court’s decision and remand this case for further proceedings. For purposes of summary judgment Harrison was only required to show that a genuine issue of material fact existed as to whether Dr. Binnion’s alleged negligence was a substantial factor in causing Harrison’s resulting CPM. I take issue with the majority requiring a higher standard of proof than what our current case law dictates.
Proximate cause consists of actual cause and true proximate cause. Newberry v. Martens, 142 Idaho 284, 288, 127 P.3d 187, 191 (2005). Actual cause determines whether the actor’s conduct produced the harm and true proximate cause, or legal cause, determines whether liability for that conduct should attach. Id. “Actual cause is the factual question of whether a particular event produced a particular consequence.” Id. “If reasonable people might reach a different conclusion from conflicting inferences based on the evidence then the [summary judgment] motion must be denied.” Cramer v. Slater, 146 Idaho 868, 873, 204 P.3d 508, 513 (2009). In Idaho, the standard for applying proximate cause in medical malpractice actions containing multiple causes is the “substantial factor” test. Fussell v. St. Clair, 120 Idaho 591, 602, 818 P.2d 295, 306 (1991). “By making the ‘substantial factor’ test the standard for all proximate cause instructions [in multiple cause medical malpractice actions] [and] by removing the ‘but for’ test we will have simplified proximate cause by eliminating the unnecessary search for single or multiple eauses[.]” Id. The Restatement (Second) of *656 Torts § 431 (1965)[7] states that an “actor’s negligent conduct is a legal cause of harm to another if [] his conduct is a substantial factor in bringing about the harm[.]”
The following considerations are in themselves or in combination with one another important in determining whether the actor’s conduct is a substantial factor in bringing about harm to another:
(a) the number of other factors which contribute in producing the harm and the extent of the effect which they have in producing it;
(b) whether the actor’s conduct has created a force or series of forces which are in continuous and active operation up to the time of the harm, or has created a situation harmless unless acted upon by other forces for which the actor is not responsible;
(c) lapse of time.
Restatement (Second) of Torts § 433 (1965) (emphasis added). As to subsection (b) of § 433 the comments reference the following:
If the effects of the actor’s negligent conduct actively and continuously operate to bring about harm to another, the fact that the active and substantially simultaneous operation of the effects of a third person’s ... tortious ... act is also a substantial factor in bringing about the harm does not protect the actor from liability.
Restatement (Second) of Torts § 439 (1965) (emphasis added);[8] see also Restatement (Second) of Torts § 433 cmt. e.
Where the negligent conduct of the actor creates or increases the risk of a particular harm and is a substantial factor in causing that harm, the fact that the harm is brought about through the intervention of another force does not relieve the actor of liability, except where the harm is intentionally caused by a third person and is not within the scope of the risk created by the actor’s conduct.
Restatement (Second) of Torts § 442B (1965) (emphasis added).
In the present case, regardless whether it was alleged that Dr. Hartford committed greater acts of negligence than Dr. Binnion, Dr. Binnion’s actions must be evaluated solely on whether her negligence was sufficient, when paired with any foreseeable subsequent negligence, to substantially contribute to the final outcome. Therefore, Dr. Binnion’s alleged negligence must be evaluated in light of Harrison’s ultimate injury and not solely with respect to any subsequent actions on the part of Dr. Hartford. Other jurisdictions have looked at multiple causation injuries and evaluated whether the “actor’s negligent conduct actively and continuously operate to bring about harm to another[.]” See Restatement (Second) of Torts § 439; Osborn v. Irwin Mem’l Blood Bank, 5 Cal.App.4th 234, 7 Cal.Rptr.2d 101 (1992) (finding that § 439 is applicable because “[a] ‘continuous’ chain of cause and effect is manifest [where] [a boy] received blood from [the blood bank’s] donor pool because [the blood bank] misrepresented that directed donations were not available; and [the boy] contracted AIDS because [the] blood was contaminated, just as his parents feared it would be”); Schnebly v. St. Joseph Mercy Hosp. of Dubuque, 217 N.W.2d 708, 730-31 (Iowa 1974) (overruled on other grounds) (finding the laboratory’s negligence in reporting blood results set the stage for the subsequent negligence of the Doctor’s reliance on those results despite other conflicting results and therefore, the Doctor’s negligence was not a superseding cause to the laboratory’s liability); Rudeck v. Wright, 218 Mont. 41, 709 P.2d 621, 627 (1985) (holding that a doctor is not relieved from liability for his negligent act of leaving *657 a lap mat in patient following surgery because his negligence “actively and continuously act[ed] to cause harm to his patient” along with the “active and substantially simultaneous negligent act of the nurses” in failing to account for the lap mat); Wilson v. Brister, 982 S.W.2d 42, 45 (Tex.App.1998) (finding summary judgment inappropriate where evidence supported the contention that physician was a concurring cause of patient’s suicide despite the negligence of the friend that gave patient the gun and bullets).
In the present case, for the purposes of summary judgment only, it was assumed that Dr. Binnion breached the local standard of care in the following areas:
1. Dr. Binnion failed to fully and completely communicate Harrison’s history, physical exam, symptoms and test results to Dr. Hartford prior to Harrison’s admission to the orthopedic floor.
2. Dr. Binnion failed to communicate within her physician’s orders at the time they were written[ ] her concerns about rapid elevation of sodium[ ] and that all laboratory values be immediately communicated to Dr. Hartford upon receipt.
3. Dr. Binnion violated the local standard of care by “admitting” Harrison to the orthopedic floor rather than the Intensive Care Unit (even though he also testified she had no admitting privileges), and
4.Dr. Binnion failed to slow the rate [at which] Harrison’s sodium levels were corrected.
Thus, the inquiry of this Court on review is whether there exists a genuine issue of material fact as to whether any of the presumed breaches was a substantial factor in bringing about Harrison’s CPM.[9]
In his deposition Dr. Navar states that in his opinion Dr. Binnion’s breach of the local standard of care was a substantial factor in causing the condition of CPM in Harrison. The district court’s opinion states that plaintiff “failed to produce admissible expert testimony that, to a reasonable degree of medical certainty, Dr. Binnion caused Harrison’s CPM by failing to slow the correction of his sodium levels before 3:25 a.m. when her care transferred to Dr. Hartford.” The district court and the majority rely on the following testimony of Dr. Navar to support this contention:
A: I don’t know whether the initial increase from 96 to 110 over a 12-hour period would have been enough to result in the insult just by itself.
Q: Okay. How about the 9 milliequivalent increase in the approximate six-hour period of time from 0049 to 6 a.m., would that in and of itself have been enough to cause CPM in Mr. Harrison?
A: I don’t know.
(emphasis added). It is clear from the language “just by itself’ and “in and of itself’ that this portion of Dr. Navar’s deposition *658 addressed whether but-for Dr. Binnion’s presumed negligence the injury to Harrison would not have occurred. This inquiry misses the point. The important question is: whether Dr. Binnion’s presumed negligence was a substantial factor in contributing to Harrison’s injury, not whether it was the sole cause. Dr. Navar specifically addressed this question stating in his opinion that “Dr. Binnion’s breach of the prevailing local standard of care as identified above was a substantial factor in causing the condition of [CPM] in Mr. Harrison.”
The majority takes issue with the fact that Dr. Navar’s testimony is not supported sufficiently with evidence in the record. However, it was not sufficiently contested either. The only testimony regarding the cause of Harrison’s CPM addressed whether Dr. Binnion’s actions were sufficient standing alone. As previously stated, the evidence should have addressed whether Dr. Binnion’s actions were a substantial factor in causing the injury rather than the sole cause.
Further, Dr. Laureno stated that he would be able to provide the following opinions at trial and that these opinions were developed to a reasonable degree of medical certainty: [10]
6. The rapid elevation of sodium was a substantial factor in causing the condition of CPM, resulting in “Locked-in Syndrome” and neurological injury.
7. Had Mr. Harrison’s sodium been raised at a reasonably conservative rate, more likely than not, Mr. Harrison would not have suffered from the condition of CPM.
8. The rapid elevation of sodium, and resulting CPM, were substantial factors in requiring further hospitalization, care, treatment and medical expenses to Mr. Harrison.
This Court recently adopted the Restatement (Second) of Torts § 457 (1965) which “generally applies to any subsequent medical negligence which is necessary to correct an original act of medical negligence, thereby making acts of subsequent medical negligence generally foreseeable.” Cramer at 874, 204 P.3d at 514. We also held that concurring acts of negligence would then be analyzed and weighted by the jury pursuant to Idaho’s comparative fault statute. Id; See also I.C. § 6-801.
In Manning, this Court held that a “substantial factor” instruction was properly given to the jury in a multiple cause medical malpractice action.[11] Manning v. Turin Falls Clinic & Hosp., Inc., 122 Idaho 47, 51, 830 P.2d 1185, 1189 (1992). On April 17, 1987, Daryl Manning was admitted for the final time to the Twin Falls Clinic & Hospital. Id. at 49, 830 P.2d at 1187. His chronic obstructive pulmonary disease (COPD) with marked hypoxemia and increased C02 retention had deteriorated to the point where “his death was imminent.” Id. On April 20, Daryl’s physician informed the family that he had 24 hours to live; an arterial blood gas test was taken which confirmed that his “condition had deteriorated to a point nearly incompatible with the sustaining of life.” Id. at 49-50, 830 P.2d at 1187-88. Immediately following the arterial blood gas test, but pri- or to the results, the nursing staff temporarily disconnected Daryl’s supplemental oxygen in order to move him to a private room. Id. at 49, 830 P.2d at 1187. Daryl had been moved less than fifteen feet from his bed when he suffered from extreme respiratory distress; he died shortly thereafter. Id. at 50, 830 P.2d at 1188. Despite the imminence of his death, the jury concluded, and this Court affirmed, that the nurses who moved Daryl without the use of supplemental oxygen were a proximate cause of Daryl’s death under the substantial factor test. Id. at 51, 830 P.2d at 1189. The Manning decision is similar to this case in that the question posed to the jury is not whether the removal of Daryl’s oxygen was the sole cause of his *659 death, but rather whether it substantially contributed to his death.
Similarly, the question here should be posed as to whether Dr. Binnion’s negligence substantially caused Harrison’s resulting CPM, not whether Dr. Binnion was the sole cause. It is then for the jury to apportion fault among all the allegedly negligent actors. As in Cramer, the alleged negligence in this case of Dr. Binnion should be compared to the alleged negligence of Dr. Hartford pursuant to Idaho’s comparative fault statute. See I.C. § 6-801.
There is no doubt that the evidence in the record is conflicting. However, it is improper for this Court or the district court to weigh that conflicting evidence once the plaintiff sufficiently rebuts the defendant’s contention that no genuine issue of material fact exists. I find the expert testimony of Dr. Navar sufficient to create a genuine issue of material fact as to whether Dr. Binnion, the initiator in this unfortunate stream of events, was a substantial factor in causing Harrison’s CPM. It may well be that the evidence is weak compared to the competing evidence, but the weight of the evidence is not the issue at the summary judgment stage. There is at least a triable issue of fact as to causation that should survive summary dismissal.

. Impliedly adopted by this Court in Fussell, 120 Idaho at 602, 818 P.2d at 306. See also Challis Irr. Co. v. State, 107 Idaho 338, 689 P.2d 230 (Ct.App.1984); Crosby v. Rowand Machinery Co., 111 Idaho 939, 729 P.2d 414 (Ct.App.1986); Edmark Motors v. Twin Cities Toyota, Inc., 111 Idaho 846, 727 P.2d 1274 (Ct.App.1987).

. Although in the great majority of cases to which the rule stated in this Section is applicable, the effects of the conduct of both the actor and the third person are in simultaneous active operation, it is not necessary that their operations shall be absolutely simultaneous. It is enough that the two are in substantially simultaneous operation, as when the effect of the conduct of one or the other has ceased its active operation immediately before the other’s conduct takes active effect in harm to the other.
Restatement (Second) of Torts § 439 cmt a.

. The following are cases citing Restatement (Second) of Torts § 431 and discussing whether alleged negligence was the proximate cause of the injury pursuant to the substantial factor test. Daniels v. Hadley Mem'l Hosp., 566 F.2d 749, 760 (D.C.Cir.1977) (finding that a hospital's failure to administer forced oxygen to patient in aniphilactic shock was a substantial factor leading to his death not because it decreased circulation and distribution of sus-phrine injection, but because patient’s lack of respiration lead to cardiac arrest and neurological death); Duarte v. Zachariah, 22 Cal.App.4th 1652, 28 Cal.Rprt.2d 88, 91 (1994) (holding that injury to bone marrow allegedly caused by an over-prescription of medication is actionable regardless whether plaintiff can show that it caused reoccurrence of plaintiff's cancer); Kaiser Found. Health Plan v. Sharp, 741 P.2d 714, 720 (Colo.1987) (finding a triable issue of fact exists even if the doctor "could not say 'in terms of probability’ whether hospitalization would have stabilized [plaintiff’s] condition” because "[t]he plaintiffs were not required to prove their case before the trial court on a motion for summary judgment”); Kastler v. Iowa Methodist Hosp., 193 N.W.2d 98, 103 (Iowa 1971) (finding that the defendant hospital was a substantial factor in bringing about plaintiff patient’s injury by allowing patient with known fainting spells to shower unsupervised); NKC Hosp., Inc. v. Anthony, 849 S.W.2d 564, 565-68 (Ky.Ct.App.1993) (the hospital’s negligence in prematurely discharging pregnant patient suffering from an undiagnosed perforated appendix was a substantial factor in causing her death and not excused by the treating physician’s failure to timely diagnose and treat the condition).

. Dr. Laureno testified at deposition that opinion nos. 6, 7, and 8 were accurate statements of his opinions.

. The instruction read: "[wjhen I use the expression 'proximate cause,' I mean a cause which, in natural or probable sequence, produced the complained injury, loss or damage. It need not be the only cause. It is sufficient if it is a substantial factor in bringing about the injury, loss or damage.” Manning, 122 Idaho at 51, 830 P.2d at 1189.