729 P.2d 414

**Glendora CROSBY, Plaintiff-Appellant,**

v.

**ROWAND MACHINERY CO.,**
**Defendant-Respondent.**

**No. 16131.**

Court of Appeals of Idaho.

Nov. 26, 1986.

Everett D. Hofmeister, Coeur d'Alene, for plaintiff-appellant.

Richard P. Wallace, Coeur d'Alene, for defendant-respondent.

BURNETT, Judge.

This appeal presents questions of proximate cause and damages. The appellant, Glendora Crosby, has suffered a tragic series of misfortunes—the death of her husband, the burning of her ranch house, the repossession of a tractor, the forced sale of some cattle, and the near loss of her entire ranch by a sheriff's sale. In this lawsuit she alleges that Rowand Machinery contributed to her problems by slandering title to her ranch. However, the district court found that Rowand's conduct did not proximately cause any damages claimed by Mrs. Crosby. With the exception of nominal damages, we uphold the district court's judgment.

I

The facts essential to our opinion are undisputed. In 1968, Mrs. Crosby and her husband began to develop a cattle herd on a ranch in Benewah County. After Mr. Crosby's death, Mrs. Crosby remained on the ranch. In order to expand the cattle operation, she and two business associates undertook a venture to clear timber from the property. For this purpose they purchased a tractor from Rowand. The purchase was made on credit. Rowand retained a security interest in the tractor.

Mrs. Crosby and her associates eventually defaulted. Rowand sued them in another state, obtaining a judgment for approximately $14,000. The judgment was filed of record in Kootenai County and Benewah County, Idaho, pursuant to the Uniform Enforcement of Foreign Judgments Act. See I.C. §§ 10–1301 to –1308. The tractor subsequently was repossessed and sold. After the sale, a deficiency of about $5,000

remained. Rowand sought and obtained in Benewah County a writ of execution to collect the outstanding balance. However, Rowand did not file of record any instrument, in Benewah County or in Kootenai County, modifying the foreign judgment earlier recorded. In response to the writ of execution, the Benewah County Sheriff issued a notice of levy on the ranch property and sent a notice of sheriff's sale to the local newspaper for publication. The notices recited the original judgment amount, plus accrued costs and interest.

Prior to the scheduled sale, Mrs. Crosby's home burned down. A substantial sum of cash was destroyed by the fire. Although the house was insured, the cash was not. In addition to these difficulties, Mrs. Crosby was burdened by two promissory notes secured by liens on the ranch. The notes required substantial monthly payments. Unable to meet her financial obligations, Mrs. Crosby contacted a banker and sought to refinance the two notes. She was unsuccessful. However, she did manage to pay the debt to Rowand, using a portion of the insurance proceeds. The sheriff's sale of the ranch was averted.

Rowand's attorney filed a satisfaction of judgment in Kootenai County. He also sent an uncertified copy of the satisfaction of judgment to Mrs. Crosby's attorney. However, no satisfaction of judgment was filed in Benewah County. Mrs. Crosby repeatedly called her lawyer about the judgment recorded in Benewah County. Her lawyer, in turn, contacted Rowand's attorney and told him that it was Rowand's duty to file a satisfaction in Benewah County. However, no action was taken for several months. Finally, Rowand's attorney gave Mrs. Crosby's lawyer a certified copy of the satisfaction of judgment. Mrs. Crosby herself filed the satisfaction of judgment in Benewah County. Her financial situation thereafter deteriorated to such an extent that she eventually was forced to sell part of her cattle herd.

Mrs. Crosby then sued Rowand. She contended that by failing to modify the recorded judgment after selling the tractor,

and by later refusing to file a satisfaction of judgment in Benewah County, Rowand prevented her from refinancing the promissory notes on the ranch. As a result, she claimed, the cattle were sold in an unfavorable market and she suffered emotional distress. She sought compensatory and punitive damages. The case was tried before a district judge sitting without a jury. The judge denied recovery on all counts and dismissed the complaint. This appeal followed.

## II

Mrs. Crosby's complaint was grounded in slander of title to her property. The parties, in pretrial and posttrial briefs, restricted their arguments to this theory.[1] However, the district judge noted that the true gravamen of the suit was not Rowand's recording of the original foreign judgment. Rather, it was Rowand's subsequent failure to update the public record by filing a modification of the judgment and by filing a satisfaction of the judgment in Benewah County. Such failure, the judge reasoned, was not a slander of title but was simply a form of negligence.

The judge made no finding as to breach of any duty to modify a recorded judgment. However, he held that I.R.C.P. 58(b) imposed a duty to record the satisfaction of a judgment.[2] By failing to record such a satisfaction in Benewah County, Rowand breached a duty owed to Mrs. Crosby. The judge also determined that Mrs. Crosby suffered pecuniary losses and emotional distress. Nevertheless, the judge rejected Mrs. Crosby's claim that such injury was

proximately caused by Rowand. The trial judge found that "[t]he Plaintiff has not proved, by a preponderance of the evidence, that the failure of the Defendant to promptly record a satisfaction of judgment in Benewah County proximately caused any damage whatsoever."

Mrs. Crosby now contends that the district court erred by analyzing the case under ordinary principles of negligence rather than under the law governing slander of title. However, we need not consider the issues raised in connection with slander of title. They are not dispositive. Mrs. Crosby's compensatory damage claim is controlled by the question of causation. If the trial court correctly found that no damages were proximately caused by the defendant's acts or omissions, recovery is unavailable under the slander of title theory.[3] If, on the other hand, some damages were proximately caused, recovery is available under the negligence theory.

## III

Proximate cause contains two elements: cause in fact and scope of legal responsibility. *Challis Irrigation Co. v. State,* 107 Idaho 338, 689 P.2d 230 (Ct.App. 1984); W. KEETON, PROSSER AND KEETON ON THE LAW OF TORTS § 41–42 (5th ed. 1984). Cause in fact consists of two closely related subparts. First, an event is the cause in fact of the succeeding event only if the succeeding event would not have occurred "but for" the prior event. Second, the act or omission must have been a "substantial factor" in producing the succeeding event. *Challis*

---

1. On appeal, Mrs. Crosby for the first time has asserted a claim characterized as "trespass on the case." From the record available to us, it appears that this claim was not raised below. We therefore decline to consider it. *See Masters v. State,* 105 Idaho 197, 688 P.2d 73 (1983); *Ace Realty, Inc. v. Anderson,* 106 Idaho 742, 682 P.2d 1289 (Ct.App.1984).

2. Rule 58(b), I.R.C.P., provides as follows:
   Upon full payment of a judgment, the party in whose favor the judgment was rendered shall have the duty to record a satisfaction of judgment in every county where the judgment or abstract of the judgment is recorded and to

file it in the court of entry. A satisfaction of judgment may be signed by the attorney of a party in whose favor the judgment was entered.

3. Idaho law requires that special damages be alleged and proven before a plaintiff can recover for slander of title. *Rayl v. Shull Enterprises, Inc.,* 108 Idaho 524, 700 P.2d 567 (1985). A plaintiff cannot meet that burden without a showing that the special damages were proximately caused by the defendant's tortious act. *See* RESTATEMENT (SECOND) OF TORTS §§ 431 and 632.

*Irrigation Co. v. State, supra; see also Munson v. State Department of Highways,* 96 Idaho 529, 531 P.2d 1174 (1975).

In this case, the district judge found that Mrs. Crosby's proof failed to satisfy the "but for" test. Such a determination is grounded in fact and will not be disturbed on appeal unless it is clearly erroneous. I.R.C.P. 52(a). The party challenging a judge's finding of fact has the burden of showing clear error. *Martsch v. Nelson,* 109 Idaho 95, 705 P.2d 1050 (Ct.App.1985).

### A

Mrs. Crosby contends that Rowand's failure to record a satisfaction of the judgment in Benewah County precluded her from refinancing the promissory notes on the ranch in order to obtain lower monthly payments. The judgment was satisfied in January, 1981, but the satisfaction was not recorded in Benewah County until August of that year. Mrs. Crosby argues that during the interim, interest rates rose and made refinancing unfeasible. She was forced to sell livestock in a depressed market, thereby incurring substantial losses.

The key testimony on this issue was provided by Mrs. Crosby's banker. When Mrs. Crosby inquired about refinancing, the banker ordered a title report on the ranch. That report disclosed the liens securing the two promissory notes, the Rowand judgment lien, and a timber deed executed by one of Mrs. Crosby's business associates. The banker testified that the timber deed constituted a hindrance to the refinancing.

QUESTION: [H]ad the Rowand lien been released between January '81, and August of '81, and had the timber deed problem still been there, would the loan have been made?

ANSWER: We would have had to have them both off, sir.

Even in the absence of the timber deed, the banker's testimony indicated that the availability of refinancing was problematic.

QUESTION: Would you have readjusted [Mrs. Crosby's] financing even in March or April even if this lien had not been on the property?

ANSWER: I would have certainly attempted, yes.

QUESTION: Would you have been able to do so to reduce her payments?

ANSWER: That I can't say. If we figure our normal amortization schedule that we like to keep at, the payments would have been the same or a little more at that point. I might have got a special approval and been able to lower them. I have done so since, but then I can't say for sure because I never crossed that bridge.

QUESTION: Could you have granted her readjustment at the end of January without any increase in her payments?

ANSWER: If the lien was not there?

QUESTION: Yes.

ANSWER: It would have been the same.

QUESTION: So you're not sure whether it would have reduced her payments or not?

ANSWER: No. If we were to state our normal, you know, what our bank goes by, it would not have reduced her payments at the point. I would have had to get special approval, which I never did because we never got that far.

QUESTION: How do you go about getting special approval?

ANSWER: We have a loan committee that we go to once a week.

QUESTION: Because of your dealings with Glendora Crosby, and had this lien not been on there, would you have sought special approval for her?

ANSWER: Yes, sir.

Mrs. Crosby could have continued to seek refinancing after the satisfaction of judgment was recorded in August, 1981. However, she claimed that refinancing had become impractical by August due to a rise in interest rates. The district judge found to the contrary. Again, the only testimony on point was provided by the banker:

QUESTION: [C]an you indicate with reference to your notes there what the interest rate was for your bank in January of 1981?

ANSWER: Yes, I can.

QUESTION: What was it?

ANSWER: We would have been quoting a rate, a prime rate at the time, which would have been the rate ending 12–31. That would continue through January and the end of January through February. It was 20½ at that time.

QUESTION: 20½%?

ANSWER: Yes.

QUESTION: Can you indicate what the rate of interest for your bank would have been in August of 1981?

ANSWER: It didn't change, just to clarify things. So we would have been quoting a June, the end-of-June rate through July and through August, which was 20.

. . . . .

We would have been quoting an end-of-June prime rate as the rates did not change between June 2 and August 4, to be a little more specific so it would have been the rate at the end of June, which was 20%.

The banker's testimony indicated that interest rates actually declined somewhat during the period between payment of the Rowand judgment in January and recording of the satisfaction in August. In light of this testimony, we sustain the district judge's determination that the delay in recording the satisfaction did not deprive Mrs. Crosby of an opportunity to refinance the notes on the ranch. The court correctly found no causal relationship between Rowand's conduct and Mrs. Crosby's subsequent sale of the cattle.

**B**

[3] Mrs. Crosby also sought damages for humiliation, indignity, anxiety, loss of sleep, worry and other forms of emotional distress. Mrs. Crosby testified as to her emotional condition and its causes. In addition, a business associate testified that Mrs. Crosby appeared upset. The trial judge recognized that Mrs. Crosby had suffered emotional distress. However, he

found that Mrs. Crosby's condition was a result of the notice of sheriff's sale and related documents, which were proper when published except in regard to amount owed. He further found that the documents would "hardly have produced any different effect" had they correctly stated the amount of the debt.

The testimony of a business associate that Mrs. Crosby remained "discouraged" and "worried," even after she had paid the deficiency and averted the sheriff's sale, did not compel a contrary finding. The trial court reasonably could have inferred that the burning of the ranch house and the existence of financial problems not attributable to Rowand were the underlying causes of Mrs. Crosby's continued distress. We cannot say that the trial court clearly erred in failing to find a causal connection between Rowand's conduct and Mrs. Crosby's mental state.

**C**

■ Mrs. Crosby sought additional compensatory damages in the form of attorney fees and costs incurred while trying to convince Rowand that it was required to file the satisfaction of judgment in Benewah County. On this point the causal nexus to Rowand's conduct was clear, but the damages themselves were not adequately proven. Although Mrs. Crosby testified that attorney fees were incurred, the record is devoid of any indication as to the amount. It is well settled that one who asserts a claim of damages has the burden of proving the amount beyond mere conjecture. *Martsch v. Nelson, supra.* Mrs. Crosby failed to adduce any evidence regarding the amount of fees allegedly incurred.[4] Upon this state of the record, the trial court's refusal to award attorney fees was proper.

However, we do not agree with the judge's apparent finding that no costs were incurred as a result of Rowand's conduct.

**4.** Although a sum of $50.00 was mentioned in plaintiff's interrogatory answers, those answers were never admitted into evidence and cannot

be considered by this Court. *See Crollard v. Crollard,* 104 Idaho 189, 657 P.2d 486 (Ct.App. 1983).

We have noted that Mrs. Crosby herself recorded the satisfaction of judgment in Benewah County. The evidence includes a receipt showing that Mrs. Crosby paid a $2.00 recording fee. There is no conflicting evidence. We are constrained to hold that Mrs. Crosby is entitled to recover this sum.

Ordinarily, we would not concern ourselves with such a modest amount. In view of the limited time and resources of our judicial system, we adhere to the doctrine of *de minimis non curat lex* (the law does not concern itself with trifles). However, in this case we have concerned ourselves with the recording fee because it is a necessary predicate to discussion of the final issue—punitive damages. We now turn to that issue.

## IV

■ Mrs. Crosby argues that Rowand's conduct warranted a punitive award. The district court, having found no causal relationship between Rowand's conduct and any injury claimed by Mrs. Crosby, did not explicitly address the question of punitive damages. However, we have determined that Mrs. Crosby did suffer nominal damages of $2.00. In Idaho, nominal damages may support a punitive award. *Young v. Scott*, 108 Idaho 506, 700 P.2d 128 (Ct.App. 1985). The foundational requirement is merely that some legally protected interest be invaded. *Village of Peck v. Denison*, 92 Idaho 747, 450 P.2d 310 (1969); *Davis v. Gage*, 106 Idaho 735, 682 P.2d 1282 (Ct. App.1984).

Our Supreme Court has held that punitive damages are limited to circumstances where the actions of the wrongdoer represent an extreme deviation from reasonable standards of conduct, and the wrongdoer has acted with an understanding of—or disregard for—the likely consequences. *Cheney v. Palos Verdes Investment Corp.*, 104 Idaho 897, 665 P.2d 661 (1983). Amplifying these requirements, the Supreme Court has said that "[t]he justification for punitive damages must be that the defendant acted with an extremely harmful state of mind...." *Cheney*, 104 Idaho at 905,

665 P.2d at 669. *See also Linscott v. Ranier National Life Insurance Co.*, 100 Idaho 854, 606 P.2d 958 (1980); *Davis v. Gage, supra.*

Here, although the district judge did not rule specifically on punitive damages, he did find that Mrs. Crosby had not proven "malicious intent" on the part of Rowand. As we have seen, Rowand's attorney filed a satisfaction of judgment in Kootenai County, and he provided an uncertified copy to Mrs. Crosby's lawyer. The testimony indicates that Rowand's attorney either thought a satisfaction had been filed in Benewah County or did not understand his client's duty to perform this act. In any event, the record contains no evidence that Rowand then was aware of Mrs. Crosby's effort to refinance her property. When Mrs. Crosby's lawyer eventually directed Rowand's attorney to the specific language of Rule 58(b), the latter immediately furnished a certified copy of the satisfaction which could be recorded.

Although the record shows that Rowand never fully complied with Rule 58(b), it also supports the judge's finding on lack of malice. The facts similarly demonstrate the absence of an "extremely harmful state of mind" as denoted in *Cheney*. Accordingly, we hold that the district judge did not err in failing to award punitive damages.

The judgment of the district court is affirmed except as to the $2.00 recording fee. Having determined the fee to be recoverable, we direct the judgment to be modified accordingly. Costs to respondent, Rowand Machinery. No attorney fees on appeal.

WALTERS, C.J., and SWANSTROM, J., concur.