95 P.3d 977

Jessica MYERS, Plaintiff–Respondent,

v.

**WORKMEN'S AUTO INSURANCE COM-
PANY, a California corporation, De-
fendant–Appellant.**

No. 28552.

Supreme Court of Idaho,
Boise, March 2004 Term.

July 23, 2004.

Cooper & Larsen, Pocatello and Bobbi K. Dominick, Boise for appellant. Gary L. Cooper and Bobbi K. Dominick argued.

Pedersen and Jackson, Twin Falls for respondent. Kenneth L. Pedersen argued.

SCHROEDER, Justice.

Jessica Myers (Myers) sued her insurance company, Workmen's Auto Insurance Company (Workmen's Auto), for breach of contract based on the alleged failure of Workmen's Auto to settle or otherwise defend against two lawsuits which were filed against Myers as a result of an auto accident. Following trial, the jury awarded Myers both nominal and punitive damages. Workmen's Auto appeals.

## I.

### FACTUAL & PROCEDURAL BACKGROUND

On March 24, 1998, Myers was involved in an auto accident with another vehicle driven by Joyce Phillips (Phillips). Phillips was insured by Allstate Insurance Company (Allstate) and Myers was insured by Workmen's Auto. As a result of the accident, two separate lawsuits were filed against Myers. Phillips filed the first suit on March 22, 2000, to recover damages sustained from the accident (Phillips suit). Allstate subsequently filed the second suit against Myers on March 24, 2000, seeking reimbursement of Phillips' first-party medical benefits (Allstate suit).

According to the terms of Myers' auto insurance policy, Workmen's Auto was obligated to "pay damages for 'bodily injury' or 'property damage' for which any 'insured' becomes legally responsible because of an auto accident." The policy further provided that Workmen's Auto "will settle or defend, as we consider appropriate, any claim or suit asking for these damages."

On April 7, 2000, Allstate sent a letter to Workmen's Auto, along with a courtesy copy of the summons and complaint which it intended to serve upon Myers. In a letter dated April 25, 2000, Aldo Cammarota, a Workmen's Auto Senior Claims Adjuster, acknowledged receipt of Allstate's letter but informed Allstate that Workmen's Auto was "unable to settle [Allstate's] claim until [Phillips'] bodily injury claim is resolved." Mr. Cammarota added that he would be asking Phillips' attorney "to provide his client's full settlement package so that we may attempt to evaluate and resolve this claim short of litigation."

On July 24, 2000, Myers was served with a summons and complaint in the Allstate suit. The summons stated that Myers had twenty days from the date of service to respond or judgment may be entered against her. Myers immediately contacted her insurance agent who faxed the summons and complaint to the Workmen's Auto claim department on August 2, 2000. Despite its contractual obligation to do so, Workmen's Auto did not retain counsel to represent Myers in the Allstate suit. A default judgment in the amount of $5,755.60 was entered against Myers on August 31, 2000.

Once the default judgment was entered against Myers, Allstate attempted, unsuccessfully, to recover the judgment from Workmen's Auto. In a letter dated September 6, 2000, Allstate informed Workmen's Auto regarding the judgment and offered to accept payment in the sum of $5,130.60, if paid within fifteen days of the date of the letter. Attached to the September 6, 2000, letter was a copy of the default judgment entered against Myers. Workmen's Auto did not respond. On September 25, 2000, Allstate sent Workmen's Auto a second letter to inform the company that if it refused to settle the case within ten days from the date of the letter, it would "initiate action to revoke the license of your insured, Jessica Myers, and [would] also ... fil[e] a complaint with the Department of Insurance for the State of Idaho regarding [its] failure to resolve this matter." Again, Workmen's Auto did not respond.

On September 19, 2000, Myers was served with a summons and complaint in the Phillips suit. As with the Allstate suit, Myers promptly faxed copies of these documents to Workmen's Auto on October 3, 2000.

Frustrated by the repeated refusal of Workmen's Auto to respond to its attempts at reaching a settlement, Allstate focused its collections efforts against Myers. On October 31, 2000, Allstate sent a letter to the Idaho Transportation Department, along with a certified copy of the default judgment entered against Myers. In the letter Allstate requested, pursuant to I.C. § 49–1204, that Myers' driving privileges be suspended until the judgment was paid in full. The letter indicated that courtesy copies were sent to both Myers and Workmen's Auto. Myers' driving privileges were subsequently suspended in accordance with Allstate's request.

On November 14, 2000, Workmen's Auto retained an attorney to represent Myers in both lawsuits. The attorney filed a notice of appearance in the Phillips suit. Subsequently the attorney filed a notice of substitution of counsel on December 12, 2000, in the Phillips suit. Substituted counsel advised Workmen's Auto in a letter dated the same day that, "[t]he likelihood of having the [Allstate] case set aside at this stage is uncertain because of the lapse of time." The letter stated, "I'd recommend you consider payment immediately. Please advise."

Meanwhile, the impact of the default judgment and subsequent license suspension was beginning to impose significant burdens upon Myers and her family. According to Myers, by January 2001, she was separated from her husband, the mother of two children and three months pregnant with a third child. As a result of the default judgment and subsequent license suspension, she was

forced to risk criminal sanctions for driving on a suspended license or find alternative means of transportation for herself and her family. Additionally, the August 31, 2000, default judgment entered against Myers was now a matter of public record. On January 23, 2001, Myers sent a letter by certified mail to Workmen's Auto in which she informed Workmen's Auto concerning her license suspension and pleaded for immediate action to be taken on her behalf. Despite her pleas, Workmen's Auto did not pay the default judgment or otherwise act to restore Myers' driving privileges.

Since the August 31, 2000, default judgment was entered against Myers, Workmen's Auto had made no attempt to work with Allstate toward a resolution of the matter. Consequently, Allstate filed a complaint against Workmen's Auto with the Idaho Department of Insurance on February 27, 2001, detailing the difficulty it had experienced in attempting to settle its claim with Workmen's Auto. Allstate requested the Department suspend Workmen's Auto's authorization to transact business in the State of Idaho because it seemed "that would be the only way that Workmen's Auto [could] be forced to pay attention to judgments which [had] been entered against their insured."

On February 28, 2001, the attorney for Myers filed a motion to set aside the default judgment. However, the motion was not set for hearing. Counsel submitted neither an affidavit nor brief in support of the motion. Consequently, the motion was never addressed or ruled upon by the trial court and the default judgment entered against Myers remained in full effect.

In a letter dated March 20, 2001, Workmen's Auto responded to a letter it received from the Idaho State Department of Insurance. In the letter, Mark Gonzalez, a Workmen's Auto Regional Claims Manager, stated the following:

> We received a courtesy copy of a lawsuit filed by The Law Offices of Maguire & Kress on behalf of Allstate Insurance Company for the PIP payments made to Ms. Myers on August 18, 2000. We were in the process of negotiating the bodily injury settlement with Ms. Phillips when we were notified of the lawsuit from Allstate Insurance Company. We spoke to The Law Offices of Maguire & Kress and indicated we are still in the process of negotiating the bodily injury claims with the attorney for Ms. Phillips and we would not be able to settle the underlying PIP claim without a settlement of the bodily injury claim.

Mr. Gonzalez's statement concerning the date Workmen's Auto received notice of the Allstate suit appears to be a misrepresentation of the facts since the record indicates that Workmen's Auto received a courtesy copy of the summons and complaint from Allstate in a letter dated April 7, 2000. This letter also confirmed the policy of Workmen's Auto of not settling a claim when another claim relating to the same accident had not been presented for settlement.

On April 25, 2001, Myers filed suit against Workmen's Auto alleging two causes of action. The first was a breach of contract claim based on the failure of Workmen's Auto to fulfill its contractual duty of settling or otherwise defending against the two lawsuits filed against Myers. The second cause of action, which was dismissed by Myers prior to trial, was a claim for bad faith. On May 16, 2001, Workmen's Auto paid the default judgment and requested that Myers' driving privileges be restored. Workmen's Auto also settled the Phillips suit in March 2002.

On February 4, 2002, Myers filed a motion to amend her complaint to add a prayer for punitive damages pursuant to I.C. § 6–1604. Myers amended her motion on February 13, 2002. A hearing was held and the district court granted Myers' motion to amend on March 4, 2002. However, the trial court's ruling was conditioned on Myers' ability to present sufficient evidence during trial to warrant submitting the issue of punitive damages to the jury. Consequently, the district court revisited the issue of punitive damages prior to submitting the issue to the jury and determined that Myers should be allowed to proceed with her claim for punitive damages.

Following trial, the jury returned a verdict in favor of Myers and awarded her $735.00 in

nominal damages and $300,000.00 in punitive damages. The district court denied post-trial motions filed by Workmen's Auto and awarded Myers costs in the amount of $2,171.85, including copying costs of $444.60. Workman's Auto appeals.

## II.

## THE DISTRICT COURT ACTED WITHIN ITS DISCRETION IN ALLOWING AMENDMENT OF THE COMPLAINT TO ADD A CLAIM OF PUNITIVE DAMAGES AND IN SUBMITTING THE CLAIM TO THE JURY

### A. Standard of Review

 To support her motion to add punitive damages under I.C. § 6–1604, Myers was required to establish a reasonable likelihood she could prove by a preponderance of the evidence that Workmen's Auto acted oppressively, fraudulently, wantonly, maliciously or outrageously. *See Vaught v. Dairyland Ins. Co.*, 131 Idaho 357, 362, 956 P.2d 674, 679 (1998). The district court's determination that Myers established such a reasonable likelihood is reviewed for abuse of discretion. *Id.* at 362–63, 956 P.2d at 679–80.

### B. The district court did not abuse its discretion in granting Myers' motion to amend and allowing the issue of punitive damages to be submitted to the jury.

 Workmen's Auto claims that the district court erred in (1) granting Myers' mo-

tion to amend her complaint to add a claim for punitive damages pursuant to I.C. § 6–1604, and (2) submitting the issue of punitive damages to the jury. As the appealing party, Workmen's Auto carries the burden of showing that the district court committed error. *See Western Cmty. Ins. Co. v. Kickers, Inc.*, 137 Idaho 305, 306, 48 P.3d 634, 635 (2002). A party seeking punitive damages must adhere to the requirements of I.C. § 6–1604. At the time of trial, I.C. § 6–1604 provided in pertinent part: [1]

(1) In any action seeking recovery of punitive damages, the claimant must prove, by a preponderance of the evidence, oppressive, fraudulent, wanton, malicious or outrageous conduct by the party against whom the claim for punitive damages is asserted.

(2) All civil actions in which punitive damages are permitted, no claim for damages shall be filed containing a prayer for relief seeking punitive damages. However, a party may, pursuant to a pretrial motion and after hearing before the court, amend the pleadings to include a prayer for relief seeking punitive damages. The court shall allow the motion to amend the pleadings if the moving party establishes at such hearing a reasonable likelihood of proving facts at trial sufficient to support an award of punitive damages. A prayer for relief added pursuant to this section shall not be barred by lapse of time under any applica-

---

1. I.C. § 6–1604 was amended in 2003 and currently provides in relevant part:

**Limitation on punitive damages**
(1) In any action seeking recovery of punitive damages, the claimant must prove, by clear and convincing evidence, oppressive, fraudulent, malicious or outrageous conduct by the party against whom the claim for punitive damages is asserted.
(2) In all civil actions in which punitive damages are permitted, no claim for damages shall be filed containing a prayer for relief seeking punitive damages. However, a party may, pursuant to a pretrial motion and after hearing before the court, amend the pleadings to include a prayer for relief seeking punitive damages. The court shall allow the motion to amend the pleadings if, after weighing the evidence presented, the court concludes that, the moving party has established at such hearing a

reasonable likelihood of proving facts at trial sufficient to support an award of punitive damages. A prayer for relief added pursuant to this section shall not be barred by lapse of time under any applicable limitation on the time in which an action may be brought or claim asserted, if the time prescribed or limited had not expired when the original pleading was filed.
2003 Idaho Sess. Laws ch. 122, sec. 2, p. 371. This Court will not consider the 2003 amendment in this case because the cause of action underlying this appeal accrued prior to July 1, 2003. *See* 2003 Idaho Sess. Laws ch. 122, sec. 6, p. 372 ("This act shall be in full force and effect on and after July 1, 2003. Sections 1 through 3 of this act shall apply to all causes of action which accrue thereafter."). *See also* Idaho Code § 73–101 ("No part of these compiled laws is retroactive, unless expressly so declared.").

ble limitation on the time in which an action may be brought or claim asserted, if the time prescribed or limited had not expired when the original pleading was filed.

Prior to trial Myers moved to amend her complaint to add a prayer for punitive damages. A hearing was held, and the district court granted Myers' motion to amend on March 4, 2002. The ruling was not final, however, as the district court stated:

[T]he Court is going to rule that there are sufficient facts in this case for this Court to find—and this Court does find—a reasonable likelihood of proving facts at trial sufficient to support an award of punitive damages, and the Court is going to allow the Plaintiff to amend the Complaint and request punitive damages; however, with this caveat, gentlemen, that before you would put on a claim for damages—I'm not talking about the elements—but before talking about the punitive damages to the jury and before you rest your case in chief, I think you would have to again request that you be allowed to go forward with your claims of punitive damages, and the Court at that time would make a ruling if you have enough in the record to do so.

Following the presentation of Myers' case-in-chief, the district court revisited the issue of punitive damages and determined that the evidence presented justified submitting the issue of punitive damages to the jury. There was no error in reserving a final decision on submitting the issue of punitive damages to the jury.

The statutory process was followed in amending the complaint and submitting the issue of punitive damages to the jury. The question then is whether the evidence supports the award of punitive damages made by the jury.

**C. There is substantial evidence to support the jury's award of punitive damages.**

■ Workmen's Auto had a contractual obligation to "pay damages for 'bodily injury' or 'property damage' for which any 'insured' becomes legally responsible because of an auto accident" and to "settle or defend ... any claim or suit asking for these damages."

Workmen's Auto breached its contractual duty following Myers' March 24, 1998, auto accident by not settling or otherwise defending against the Allstate suit, thus allowing a default judgment to be entered against Myers. Workmen's Auto continued to breach its obligation by refusing to respond to Allstate's attempts to collect its judgment regardless of the impact on Myers. Consequently, Myers was subjected to Allstate's collection efforts, which resulted in a five-month suspension of her driving privileges. All of this occurred despite notice of the suit, notice of the default judgment, and knowledge of the consequences to its insured.

The record in this case is riddled with instances where Workmen's Auto had the opportunity to fulfill its contractual obligation, yet refused to do so. Workmen's Auto attempts to shift blame onto the shoulders of the attorneys it retained to represent Myers. However, the effort on the part of Workmen's Auto to retain counsel on behalf of Myers was made only after the default judgment was entered against her in the Allstate suit. The attorney handling the matter immediately advised Workmen's Auto that, given the lapse of time, it was unlikely that the judgment would be set aside and that Workmen's Auto should "consider payment immediately." Nevertheless, Workmen's Auto continued to unreasonably delay settlement of Allstate's claim. It was not until after Myers filed suit against Workmen's Auto that both claims against her were finally settled by Workmen's Auto. The only justification given by Workmen's Auto for its delay was its desire to settle the Allstate and Phillips cases at the same time in an attempt to resolve both claims within the $25,000.00 policy limit. A jury could find the conduct of Workmen's Auto was "an extreme deviation from reasonable standards of conduct, and that the act was performed by [Workmen's Auto] with an understanding of or disregard for its likely consequence." *See Cheney*, 104 Idaho at 905, 665 P.2d at 669.

■ Workmen's Auto also claims that punitive damages are not available in the routine, ordinary breach of contract action. While this is a correct statement of the law,

*Linscott v. Rainier Nat'l Life Ins. Co.*, 100 Idaho 854, 861, 606 P.2d 958, 965 (1980), it should not be construed as a blanket prohibition against punitive damages in breach of contract claims. It is not the nature of the case, whether tort or contract, that controls the issue of punitive damages. The issue revolves around whether the plaintiff is able to establish the requisite "intersection of two factors: a bad act and a bad state of mind." *Id.* at 858, 606 P.2d at 962. As this Court noted in *Linscott,* "numerous situations arise where the breaking of a promise may be an extreme deviation from standards of reasonable conduct, and, when done with knowledge of its likely effects, may be grounds for an award of punitive damages." *Id.* at 860, 606 P.2d at 964.

Workmen's Auto also argues that Myers' decision to dismiss her bad faith claim against Workmen's Auto allowed her to circumvent the "tort" proof necessary to justify an award of punitive damages. According to Workmen's Auto, a claim of bad faith would have been inappropriate given the facts of this case because such actions are not available in third party claims. Thus, Workmen's Auto contends that since Myers' bad faith claim would have most likely failed, her claim for punitive damages must fail as well. This argument is without merit for two reasons. First, the elements necessary to prevail in a punitive damages claim predicated upon breach of contract are not synonymous with those necessary to prevail in a bad faith claim. The fact that Myers might not have succeeded in her bad faith claim against Workmen's Auto is irrelevant to a determination of whether the jury's verdict of punitive damages should be affirmed on appeal. Second, Myers' decision to dismiss her bad faith claim did not relieve her of her burden of establishing that Workmen's Auto acted in a manner that was "an extreme deviation from reasonable standards of conduct, and that the act was performed by the defendant with an understanding of or disregard for its likely consequences." *See Cheney,* 104 Idaho at 905, 665 P.2d at 669.

Workmen's Auto contends that Idaho courts have only allowed punitive damages in breach of contract actions when: (1) there was significant economic harm caused by an unlawful withholding or appropriation of property, (2) physical harm to the plaintiff, or (3) some element of fraud. According to Workmen's Auto, punitive damages are not justified in this case because Myers failed to prove similar conduct on the part of Workmen's Auto or that she was damaged as a result of the breach. However, this Court has never insisted that breach of contract actions involving punitive damages fit neatly within one of these three defined categories. The Court stated in *Harwood v. Talbert,* 136 Idaho 672, 39 P.3d 612 (2001):

> "In Idaho, nominal damages may support a punitive award. The foundational requirement is merely that some legally protected interest be invaded." *Crosby v. Rowand Mach. Co.,* 111 Idaho 939, 944, 729 P.2d 414, 419 (Ct.App.1986). "There is no reason why nominal damages, which also require a showing that a legally protected interest has been invaded, cannot fulfill the requirement." *Davis v. Gage,* 106 Idaho 735, 682 P.2d 1282 (Ct.App.1984). Although the imposition of nominal damages is unlikely to have any deterrent effect, an assessment of punitive damages takes away the incentive for engaging in bad conduct by making such conduct unprofitable. *Id.*

*Id.* at 679–80, 39 P.3d at 619–20. The amount or type of damages alleged (whether significant, nominal, economic, physical or otherwise) is not determinative on whether the issue of punitive damages should be submitted to the jury. Further, the mental state necessary to justify an award of punitive damages is not limited to instances of fraud. As this Court noted in *Cheney,* "[t]he justification of punitive damages must be that the defendant acted with an extremely harmful state of mind, whether that be termed 'malice, oppression, fraud or gross negligence;' 'malice, oppression, wantonness;' or simply 'deliberate or willful.' " *Cheney,* 104 Idaho at 905, 665 P.2d at 669. Fraud is merely one type of mental state, which might support an award of punitive damages.

Workmen's Auto claims that Myers' award of punitive damages was unjustified because the allegations supporting her claim were

mere boorish or rude behavior on the part of Workmen's Auto. Workmen's Auto cites this Court's decision in *Hoglan v. First Sec. Bank of Idaho, N.A.,* 120 Idaho 682, 819 P.2d 100 (1991), in which a jury awarded the plaintiffs $20,000 in compensatory damages and $200,000 in punitive damages after First Security breached its contract with the Hoglans and published statements which undermined their credit rating. This Court vacated the award of punitive damages because the bank's negligence, which took more than one year to correct, was the result of its bureaucratic procedures and did not evidence a harmful state of mind. The facts of *Hoglan* are distinguishable from this case. Unlike *Hoglan,* the conduct of Workmen's Auto was not an inadvertent manifestation of bureaucratic procedures. Workmen's Auto made a conscious decision to delay settlement of the claims against Myers in an unreasonable manner and with no regard for the consequences of the breach of the contractual relationship.

The district court did not abuse its discretion in submitting the issue of punitive damages to the jury and there is substantial evidence to support the decision of the jury to award punitive damages.

### III.

**THE DISTRICT COURT DID NOT ERR IN FAILING TO STRIKE THE AFFIDAVIT OF JAMES WADHAMS IN SUPPORT OF THE MOTION TO AMEND THE COMPLAINT TO ADD A CLAIM FOR PUNITIVE DAMAGES**

#### A. Standard of Review

■ This Court will not reverse the trial court if an alleged error is harmless. In civil cases, I.R.C.P. 61 states that unless the error appears inconsistent with substantial justice, it is not grounds for reversal and that the court must disregard any error in the proceedings which does not affect the substantial rights of the parties. *See* I.R.C.P. 61. This Court has also stated that if an error did not affect a party's substantial rights or the error did not affect the result of the trial, the error is harmless and not grounds for

reversal. *Martin v. Hackworth,* 127 Idaho 68, 70, 896 P.2d 976, 978 (1995); *Soria v. Sierra Pac. Airlines, Inc.,* 111 Idaho 594, 608, 726 P.2d 706, 718 (1986).

#### B. Any error committed by the district court in not striking the affidavit of Mr. Wadhams is harmless.

■ Myers filed an affidavit of her expert, James Wadhams, in support of her motion to amend to add a claim for punitive damages. During the hearing on Myers' motion to amend, Workmen's Auto moved to strike Mr. Wadhams' affidavit because Myers failed to serve the affidavit contemporaneously with her motion to amend as required by I.R.C.P. 6(c)(2). The motion to strike was denied.

Workmen's Auto contends that it was prejudiced by the late filing of Wadhams' affidavit and the district court's denial of its motion to strike because, despite statements by the district court to the contrary, the district court improperly relied upon the affidavit in granting Myers' motion to amend. The argument asserted by Workmen's Auto fails. The district court found that the facts justified granting Myers' motion to amend whether or not Wadhams' affidavit was considered. The district court did not cite Mr. Wadhams' affidavit as support for any of its rulings. The affidavit was never submitted to the jury, and Wadhams did not testify at trial. Workmen's Auto's substantial rights were not violated by the district court's denial of its motion to strike Wadhams' affidavit.

### IV.

**THE DISTRICT COURT DID NOT ERR IN GRANTING MYERS' MOTION FOR PROTECTIVE ORDER**

During the five-month suspension of Myers' driving privileges, she consulted with and was represented by Fred Lewis in his capacity as a divorce attorney. Myers moved for a protective order pursuant to I.R.C.P. 31(d) to prohibit Workmen's Auto from taking Lewis' deposition. The motion stated that communications and records sought by Workmen's Auto fell within the protection of the attorney-client privilege, cit-

ing I.R.E. 502. The district court granted the motion and issued a protective order prohibiting Workmen's Auto from deposing Lewis.

■ Workmen's Auto claims that the district court erred in granting Myers' motion for a protective order. According to Workmen's Auto, Myers put her mental state at issue by crying on the witness stand during trial. Workmen's Auto claims that the deposition of Lewis should have been allowed to gather possible impeachment evidence regarding any mental distress Myers might have suffered as a result of the suspension of her license. Workmen's Auto asserts that any communications between Myers and Lewis regarding mental distress over the suspension of her license would not fall within the protection of the attorney-client privilege because they would not have been made for the purpose of obtaining Lewis' services as a divorce lawyer.

Myers' mental state was not relevant to the determination of any issue in this case. She sought punitive and nominal damages based on breach of contract, and the jury was instructed accordingly. Myers did not seek to recover actual damages sustained as a result of the breach. Consequently, the jury did not receive an instruction regarding Myers' mental state, and was not allowed to award her damages for mental distress. Because this Court finds that the evidence sought by Workmen's Auto was irrelevant, and thus inadmissible, it is not necessary to reach the issue of attorney-client privilege.

## V.

### THE DISTRICT COURT DID NOT ERR BY EXCLUDING EVIDENCE OF MYERS' DRIVING HISTORY

Workmen's Auto sought to introduce evidence that Myers had previously driven on a suspended license for approximately 1½ years and had driven many times without insurance. The district court refused to admit the evidence based on its findings that it was both irrelevant and overly prejudicial. Workmen's Auto contends that the evidence regarding Myers' prior suspensions became relevant when she described her state of mind and cried in front of the jury.

### A. Standard of Review

■ A trial court has broad discretion in the admission of evidence, and its judgment will only be reversed when there has been an abuse of that discretion. *State v. Zimmerman,* 121 Idaho 971, 973–74, 829 P.2d 861, 863–64 (1992). Nevertheless, questions of relevancy are reviewed *de novo. State v. Raudebaugh,* 124 Idaho 758, 764, 864 P.2d 596, 602 (1993).

### B. The trial court properly excluded evidence of Myers' driving history.

■ Relevant evidence means evidence having a tendency to make the existence of a fact of consequence to the determination of the action more probable or less probable than it would be without the evidence. I.R.E. 401. All relevant evidence is admissible except as otherwise provided by the rules of evidence or other applicable rules. I.R.E. 402. Workmen's Auto sought to introduce evidence that Myers had previously driven on a suspended license and without insurance in an attempt to diminish her claim that she was harmed as a result of her license suspension. Myers sought to recover only nominal and punitive damages and was not awarded damages for actual loss suffered as a result of her five-month license suspension. Consequently, the issue of whether or not Myers suffered any emotional harm as a result of her license suspension was irrelevant. Therefore, the district court acted properly when it ruled that Myers' driving record was irrelevant to any issue in her breach of contract action against Workmen's Auto. It is unnecessary to consider whether the evidence would have been overly prejudicial to Myers.

## VI.

### THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN DENYING WORKMEN'S AUTO'S MOTION FOR A NEW TRIAL PURSUANT TO I.R.C.P. 59(a)(5)

Workmen's Auto claims that in order to sustain an award of punitive damages, the

award must bear some reasonable relationship to the amount of compensatory damages awarded, citing *Yacht Club Sales & Serv., Inc. v. First Nat'l Bank of N. Idaho*, 101 Idaho 852, 864, 623 P.2d 464, 476 (1980). According to Workmen's Auto, the jury's award of punitive damages ($300,000.00) bore no such relationship to Myers' award of nominal damages ($735).

### A. Standard of Review

 In ruling upon a motion for a new trial premised upon inadequate or excessive damages, the trial court must follow the rule set out in *Dinneen v. Finch*, 100 Idaho 620, 603 P.2d 575 (1979). The trial court must weigh the evidence and then compare the jury's award to what the court would have given had there been no jury. The verdict should not stand if the disparity is so great that it appears to the trial court that the award was given under the influence of passion or prejudice. *Quick v. Crane*, 111 Idaho 759, 768, 727 P.2d 1187, 1196 (1986). It is a jury function to set the damage award based on its sense of fairness and justice. As such, the trial court must defer to the jury unless it is apparent to the court "that there is a great disparity between the two damage awards and that the disparity cannot be explained away as simply the product of two separate entities valuing the proof of the plaintiff's injuries in two equally fair ways." *Id.* at 769, 727 P.2d at 1198.

 This Court will not reverse a trial court's order granting or denying a motion for new trial "unless the court has *manifestly* abused the wide discretion vested in it." *Id.* at 770, 727 P.2d at 1198. (emphasis in original) (citations omitted). "While we must review the evidence, we are not in a position to 'weigh' it as the trial court." *Id.* (citation omitted).

### B. Workmen's Auto is not entitled to a new trial on the basis that the jury's award of punitive damages was excessive.

I.R.C.P. 59(a) provides in pertinent part:
A new trial may be granted to all or any of the parties and on all or part of the issues in an action for any of the following reasons:

\* \* \* \* \* \*

5. Excessive damages or inadequate damages, appearing to have been given under the influence of passion or prejudice.

 Workmen's Auto challenges the jury's award of $300,000 in punitive damages as being excessive in light of the fact that Myers failed to prove actual damages and was awarded only nominal damages in the amount of $735. "Proportionality is a factor to be considered in evaluating whether a punitive award is excessive." *Edmark Motors v. Twin Cities Toyota, Inc.*, 111 Idaho 846, 851, 727 P.2d 1274, 1279 (Ct.App.1986), *not followed on other grounds by Fussell v. St. Clair*, 120 Idaho 591, 818 P.2d 295 (1991). However, the Court also must consider "the prospective deterrent effect of such an award upon persons situated similarly to the defendant, the motives actuating the defendant's conduct, the degree of calculation involved in the defendant's conduct, and the extent of the defendant's disregard of the rights of others." *Boise Dodge, Inc. v. Clark*, 92 Idaho 902, 908, 453 P.2d 551, 557 (1969). *See also Davis v. Gage*, 106 Idaho 735, 682 P.2d 1282 (Ct.App.1984). Furthermore, as this Court stated in *Harwood v. Talbert*, 136 Idaho 672, 39 P.3d 612 (2001):

"In Idaho, nominal damages may support a punitive award. The foundational requirement is merely that some legally protected interest be invaded." *Crosby v. Rowand Machinery Co.*, 111 Idaho 939, 944, 729 P.2d 414, 419 (Ct.App.1986). "There is no reason why nominal damages, which also require a showing that a legally protected interest has been invaded, cannot fulfill the requirement." *Davis v. Gage*, 106 Idaho 735, 682 P.2d 1282 (Ct.App.1984). Although the imposition of nominal damages is unlikely to have any deterrent effect, an assessment of punitive damages takes away the incentive for engaging in bad conduct by making such conduct unprofitable. *Id.*

*Id.* at 679–80, 39 P.3d at 619–20. Contrary to the position taken by Workmen's Auto, the relationship between the jury's award of punitive damages and its award of other damages is not conclusive on the issue of whether

punitive damages are excessive. Instead, "the true basis for an award of one amount of punitive damages as opposed to another amount lies in an overall appraisal of the circumstances of the case." *Boise Dodge*, 92 Idaho at 908, 453 P.2d at 557.

Since this Court's decision in *Cheney*, the issue of an alleged excessive award of punitive damages is largely within the discretion of the trial judge. *See Cheney*, 104 Idaho at 905, 665 P.2d at 669. In ruling on the motion for new trial filed by Workmen's Auto, the district court concluded that there was more than ample credible evidence for the jury to return a verdict of $300,000 in punitive damages against Workmen's Auto. Specifically, the district court stated:

This Court has weighed the evidence. I have considered the credibility of the witnesses, and, frankly, had this Court been deciding this case, the jury's first award of $500,000 punitive damages, equaled what this Court would have found. So, I don't find the jury's verdict to have been given under passion or prejudice, but it was based on their view of the evidence and the credibility of each evidence witness that was called.

The district court also considered Workmen's Auto's policy of not settling any claim until all claims related to the accident were presented for settlement and concluded, given Workmen's Auto's fiduciary relationship with those it insures, that it could "see how [Workmen's Auto could] get a lot of [these individuals] in trouble with that kind of stonewall approach." Additionally, the district court noted that since the Allstate claim had already been submitted for payment, Workmen's Auto would have received credit when it settled the Phillips suit; thus, there was no basis for applying this policy in the present case. According to the district court, "[a]ll the talk [from agents of Workmen's Auto that] they didn't want to go over the $25,000 [policy] limit, this Court wasn't buying that. And I don't think the jury bought it either—as the reason why they didn't pay this sooner. So the Court is going to deny the Motion for New Trial."

This Court will not reverse a trial court's order denying a motion for a new trial on appeal "unless the court has *manifestly* abused the wide discretion vested in it." *Quick*, 111 Idaho at 770, 727 P.2d at 1198 (emphasis in original). The proper focus for a trial court when addressing a motion for a new trial based upon inadequate or excessive damages was described by this Court in *Dinneen v. Finch*, 100 Idaho 620, 625–26, 603 P.2d 575, 580–81 (1979):

Where a motion for a new trial is premised on inadequate or excessive damages, the trial court must weigh the evidence and then compare the jury's award to what he would have given had there been no jury. If the disparity is so great that it appears to the trial court that the award was given under the influence of passion or prejudice, the verdict ought not stand. It need not be proven that there was in fact passion or prejudice nor is it necessary to point to such in the record. The appearance of such is sufficient. A trial court is not restricted to ruling a verdict inadequate or excessive "as a matter of law."

In applying *Dinneen* to an allegation of an excessive award of punitive damages it is important to note "punitive damages are by their nature incapable of definite ascertainment and cannot be governed or measured by any precise standards." *Soria v. Sierra Pac. Airlines, Inc.*, 111 Idaho 594, 612, 726 P.2d 706, 724 (1986) (citations omitted).

The district court properly adhered to the standard articulated in *Dinneen*. It is worth noting that the $300,000 in punitive damages awarded by the jury is substantially less than the amount the district court would have awarded had the case been tried to the bench instead of to the jury.

Much of the argument asserted by Workmen's Auto relates to the disproportionate ratio between the jury's award of punitive damages and its award of nominal damages. However, this Court has repeatedly refused to review awards of punitive damages based on any particular mathematical formula. In light of the overall circumstances of this case, the award is appropriate to serve the purpose of deterring future similar conduct by Workmen's Auto, as well as other insurers. The district court's denial of the motion for a

new trial as to the punitive damages assessed against Workmen's Auto is affirmed.

## C. Workmen's Auto is not entitled to a new trial on the basis that the jury's award of nominal damages was excessive.

In its motion for a new trial, Workmen's Auto claimed that the jury's award of nominal damages was also excessive. Specifically, Workmen's Auto argued that it appears that the jury's award of $735 was not a "trifling sum," which suggested that the jury was acting under the influence of passion and prejudice.

Generally, nominal damages are awarded for the infraction of a legal right to demonstrate, symbolically, that the plaintiff's person or property have been violated. *Pierson v. Brooks*, 115 Idaho 529, 537, 768 P.2d 792, 800 (Ct.App.1989) (citing C. McCORMICK, THE LAW of DAMAGES, § 20 (1935)).

The jury awarded Myers $735.00 in nominal damages, a figure representing $5.00 per day for each of the 147 days Myers' driving privileges were suspended as a result of the failure of Workmen's Auto to pay Allstate's default judgment. In today's economy that may be considered a nominal damage award in light of the extended period of time involved. The district court did not abuse its discretion in denying a new trial.

## D. The issue of whether the trial court erred in denying the motion for a new trial based on instructional error was raised for the first time in Workmen's Auto's reply brief and will not be considered on appeal.

In its motion for a new trial Workmen's Auto also claimed that the district court erred in denying its proposed jury instructions regarding potential malpractice committed by the attorneys retained by Workmen's Auto to represent Myers. On appeal, Workmen's Auto raises this issue for the first time in its reply brief.

In order to be considered by this Court, the appellant is required to identify legal issues and provide authorities supporting the arguments in the opening brief. I.A.R. 35. A reviewing court looks to the initial brief on appeal for the issues presented on appeal. *Hernandez v. State*, 127 Idaho 685, 687, 905 P.2d 86, 88 (1995); *State v. Raudebaugh*, 124 Idaho 758, 763, 864 P.2d 596, 601 (1993). Consequently, "this Court will not consider arguments raised for the first time in the appellant's reply brief." *State v. Killinger*, 126 Idaho 737, 740, 890 P.2d 323, 326 (1995). Therefore, the district court's denial of the jury instructions proposed by Workmen's Auto will not be considered on appeal.

## VII.

## THE DISTRICT COURT DID NOT ERR BY DENYING WORKMEN'S MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT

Workmen's Auto's expert witness, Michael Ceft, testified that the actions and conduct of the adjusters at Workmen's Auto were neither an extreme deviation from reasonable standards of conduct nor performed with an extremely harmful state of mind. According to Workmen's Auto, Myers did not rebut this testimony. Additionally, Workmen's Auto contends that the evidence in this case establishes that the attorney retained by Workmen's Auto to represent Myers, failed to prevent Myers' license from being suspended. Finally, Workmen's Auto adds that, even assuming that the evidence established a breach by Workmen's Auto, there was no evidence establishing that the suspension of Myers' driving privileges was caused by that breach. Therefore, Workmen's Auto says there was insubstantial evidence to support the jury's verdict on the issue of causation as well as punitive damages.

### A. Standard of Review

In determining whether a motion for a directed verdict or j.n.o.v. should have been granted this Court applies the same standard as the trial court that originally passed on the motion. *Lunders v. Snyder*, 131 Idaho 689, 695, 963 P.2d 372, 378 (1998) (citation omitted). In doing so this Court exercises free review and does not defer to the findings of the trial court. *Id.* Therefore, this Court "must determine whether, admit-

ting the truth of the adverse evidence and drawing every legitimate inference most favorably to the opposing party, there exists substantial evidence to justify submitting the case to the jury." *Gen. Auto Parts Co., Inc. v. Genuine Parts Co.*, 132 Idaho 849, 855, 979 P.2d 1207, 1213 (1999) (quoting *Herrick v. Leuzinger*, 127 Idaho 293, 297, 900 P.2d 201, 205 (Ct.App.1995)). "The 'substantial evidence' test does not require the evidence be uncontradicted. It requires only that the evidence be of sufficient quantity and probative value that reasonable minds could conclude that a verdict in favor of the party against whom the motion is made is proper." *Id.* at 855, 979 P.2d at 1213 (quoting *All v. Smith's Mgmt. Corp.*, 109 Idaho 479, 480, 708 P.2d 884, 885 (1985)). Directed verdict is proper, then, "only where the evidence is so clear that all reasonable minds would reach only one conclusion: that the moving party should prevail." *Sheridan v. St. Luke's Reg'l Med. Ctr.*, 135 Idaho 775, 785, 25 P.3d 88, 98 (2001) (quoting *Student Loan Fund of Idaho v. Duerner*, 131 Idaho 45, 51, 951 P.2d 1272, 1278 (1997)).

### B. Substantial, competent evidence supports the jury's award of punitive damages.

■■■ Motions for directed verdict or for judgment notwithstanding the verdict are properly denied when, as here, substantial competent evidence supports a jury's findings. *Polk v. Larrabee*, 135 Idaho 303, 311, 17 P.3d 247, 255 (2000) (citing *Lanham v. Idaho Power Co.*, 130 Idaho 486, 495, 943 P.2d 912, 921 (1997)). The jury was not obliged to accept the opinion of Workmen's Auto's expert in the face of clear evidence that the company breached the contract and acted with indifference to the consequences of Myers. One must hope that the "expert" opinion concerning the standard of conduct for an insurer is not followed often or any other time. Otherwise there will be more punitive damage claims. Further, there is evidence from which a jury could reasonably conclude that the judgment of default entered against Myers and the suspension of her driving privileges arose from the conduct of Workmen's Auto, not that of the attorneys employed to represent her. The district

court did not err in denying the motion for judgment notwithstanding the verdict.

### VIII.

### THE PUNITIVE DAMAGES AWARD DOES NOT VIOLATE DUE PROCESS

■■■ The Due Process Clause of the 14th Amendment imposes limitations on the amount of punitive damages that a jury may permissibly impose on a tortfeasor. *BMW of N. A., Inc. v. Gore*, 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996). In *BMW*, the United States Supreme Court identified three "guideposts" for assessing whether a punitive damage award is unconstitutionally excessive: (1) the degree of reprehensibility of the defendant's conduct; (2) the ratio of the punitive damages to the actual harm inflicted on the plaintiff; and (3) the relationship between the punitive damages and the statutorily prescribed civil or criminal penalty for comparable misconduct. Workmen's Auto argues that the jury's award of $300,000.00 in punitive damages is so excessive as to violate due process, relying upon the United States Supreme Court's recent decision in *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003). In *Campbell* the Supreme Court reiterated its concern with allowing juries to base their awards solely upon the wealth of the defendant and reaffirmed the use of the three guideposts discussed in *BMW* as the proper analysis to determine the constitutionality of an award of punitive damages.

Workmen's Auto claims that reprehensibility is not determined merely by the defendant's bad motive, contending that the Court in *Campbell* required that the following factors also be considered: (1) whether the harm caused was physical as opposed to economic; (2) whether the tortious conduct evinced an indifference to or a reckless disregard for the health or safety of others; (3) the target of the conduct was financially vulnerable; (4) the conduct involved repeated actions or was an isolated incident; and (5) the harm was the result of intentional malice, trickery or deceit, or was mere accident.

Giving due consideration to the concerns of the United States Supreme Court, the award in this case does not offend due process.

Idaho has a legitimate interest in protecting its citizens from the conduct displayed by Workmen's Auto. Workmen's Auto consciously violated the fundamental obligations to defend against claims and pay damages incurred by its insured. It offered evidence that such conduct was not deviation from reasonable standards of conduct, indicating that as an institution it does not understand or recognize its obligations. The level of reprehensibility in this case is high.

The jury award of $300,000 represents 1% of the total worth of Workmen's Auto. To the extent that punitive damages have a legitimate role in preventing future wrongful conduct, this amount represents a relatively small part of the value of the company. A significantly smaller amount would likely be ineffective in deterring future wrongful conduct.

Comparing the punitive damage award to other civil penalties that might be incurred pursuant to Idaho's Trade Practices and Frauds Act is not as persuasive as Workmen's Auto suggests. Apparently the existence of that Act did not influence the company. Even the threat of losing licensure in the State did not have an immediate effect upon Workmen's Auto.

Reviewing considerations set forth in *Campbell*, the following observations can be made. First, the harm in this case was economic as opposed to physical. This weighs in favor of Workmen's Auto. However, had the indifference of Workmen's resulted in physical harm, most likely a much larger punitive damage would have been justified. Second, the tortious conduct did to a degree evince an indifference to or reckless disregard for the health or safety of another. Myers was deprived of a driver's license which placed her in physical danger of incarceration under Idaho's criminal laws if she were caught driving without a license. Under the facts of this case there was little option to do otherwise. Third, the victim in this case was very vulnerable financially. Fourth, the conduct reflected a corporate policy likely to be repeated by Workmen's in

light of its rationale and expert testimony that it did not deviate from reasonable standards. Fifth, the actions of Workmen's were not accidental. The business took money and did not do what it promised to do to protect the insured.

It should be observed that ratios of compensatory damages and punitive damages are of no real assistance in this case where only nominal damages are sought. A punitive damage award tied to some ratio would almost certainly have none of the salutary effects sought to be achieved by a punitive damage award.

The award in this case was reviewed by the judge who heard the trial. He indicated he would have made a higher award. Considering the relevant factors in the award, the amount does not violate due process standards.

## IX.

## THE DISTRICT COURT ERRED IN AWARDING THE PLAINTIFF COSTS FOR COPYING CHARGES AS A MATTER OF RIGHT

Workmen's Auto claims that the district court erred in awarding Myers $444.60 in costs as a matter of right pursuant to I.R.C.P. 54(d)(1)(C)(6), for costs associated with the creation of "jury books" containing trial exhibits which were provided to each juror and both parties.

### A. Standard of Review

 The award of costs as a matter of right and discretionary costs is subject to the trial court's discretion. I.R.C.P. 54(d)(1)(C, D); *Perkins v. U.S. Transformer West,* 132 Idaho 427, 431, 974 P.2d 73, 77 (1999). The party opposing the award bears the burden of demonstrating an abuse of the trial court's discretion. *Id.*

### B. The trial court erred in awarding Myers costs as a matter of right.

 I.R.C.P. 54(d)(1)(C)(6) allows reasonable costs for various exhibits admitted in

evidence, not to exceed $500 for all exhibits.[2] The district court allowed Myers costs for printing so-called "jury books" containing copies of trial exhibits, which were provided to each juror and both parties. However, in order to be entitled to costs as a matter of right pursuant to I.R.C.P. 54(d)(1)(C)(6), the costs must have been incurred in the preparation of exhibits that were actually admitted into evidence. The jury books were not admitted into evidence. The books were provided to each juror for the purpose of enhancing their understanding of the evidence presented at trial. Consequently, the elements necessary for an award of costs as a matter of right have not been met. The district court erred in awarding Myers $444.60 in costs as a matter of right.

## X.

### MYERS IS NOT ENTITLED TO ATTORNEY FEES ON APPEAL

 Myers requests attorney fees on appeal pursuant to I.C. § 12–121 and I.R.C.P. 54(e)(3). However, I.A.R. 35(a)(5) and (6) require that the requesting party put the request for fees in a separate section after

---

**2.** I.R.C.P. 54(d)(1)(C) provides in pertinent part:
(C) Costs as a matter of right. When costs are awarded to a party, such party shall be entitled to the following costs, actually paid, as a matter of right:
6. Reasonable costs of the preparation of models, maps, pictures, photographs, or other

the issues presented section and the request be discussed in the argument section. The argument section of Myers' brief contains neither argument nor authority in support of her request for attorney fees on appeal as required by I.A.R. 35(a)(5). Therefore, Myers' request for attorney fees on appeal is denied.

## XI.

### CONCLUSION

The judgment entered in the district court is affirmed, except the award of costs for jury book copies is vacated. Myers is awarded costs. No attorney fees are allowed.

Chief Justice TROUT, Justices KIDWELL, EISMANN and BURDICK concur.

exhibits admitted in evidence as exhibits in a hearing or trial of an action, but not to exceed the sum of $500 for all of such exhibits of each party.